**In the Matter of HUCKABEE AUTO COMPANY and Huckabee Properties, Inc., Debtors.**

**Bankruptcy Nos. 80–00151–Mac, 80–00152–Mac.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Sept. 21, 1981.

---

See also Bkrtcy., 33 B.R. 132.

Joseph J. Burton, Jr., Swift, Currie, McGhee & Hiers, Atlanta, Ga., for debtors.

John D. Carey, Macon, Ga., for the Creditors' Committee.

## MEMORANDUM DECISION ON THE CREDITORS' COMMITTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' PLAN

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

Huckabee Auto Company and Huckabee Properties, Inc., Debtors, filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Code in this Court on February 8, 1980. These two cases were consolidated by order of this Court dated April 21, 1981. As part of the consolidated proceeding, the Debtors filed a plan of reorganization and a disclosure statement, each of which is required by Chapter 11 of the Bankruptcy Code. After a hearing on the adequacy of the disclosure statement, certain court-ordered modifications were made, and the modified disclosure statement was approved by order of this Court dated April 27, 1981. The disclosure statement, accompanied by Debtors' plan of reorganization, was then transmitted by the Clerk of this Court to all parties in interest. On June 9, 1981, the Creditors' Committee filed its objection to confirmation of the plan.

The hearing on confirmation of Debtors' plan commenced on June 16, 1981 and was continued to July 15, 1981 at the request of all counsel. This continuance was granted to allow Huckabee Auto Company to develop information on its then pending loan application to the Small Business Administration. The Small Business Administration loan was intended to provide partial funding for the plan. The confirmation hearing reconvened on July 15, 1981, and after further hearing on July 17, 1981, was concluded on July 18, 1981.

The matter before the Court for decision is the "Creditors' Committee's Objections to Confirmation of the Plan." After consideration of the evidence, the arguments of counsel, and the briefs of counsel, the Court has this day entered an order sustaining the Creditors' Committee's objection and denying confirmation of Debtors' plan. The order further requires Debtors, and parties in interest wishing to be heard, to appear in this Court on a day certain to show cause as to why additional time should be granted for the filing of an alternate plan of reorganization, and to show cause why Debtors' case should not be converted to a Chapter 7 liquidation or dismissed.

In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent any findings of fact constitute conclusions of law, or to the extent any conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

Huckabee Auto Company is a corporation operating in Macon, Georgia, whose principal business is the sale and servicing of both new and used cars, and whose sole stockholder is Leo B. Huckabee, Jr. Huckabee Properties, Inc. is a wholly-owned subsidiary of Huckabee Auto Company, and is principally engaged in the sale and leasing of real estate.

General Motors Acceptance Corporation, hereinafter GMAC, was, upon the filing of the Huckabee Auto Company voluntary petition on February 8, 1980, the largest scheduled secured creditor of Huckabee Auto Company. GMAC, on or about January 17, 1980, a date prior to the filing, had taken possession of substantially all of Huckabee Auto Company's automobile inventory. On February 11, 1980, GMAC filed an adversary proceeding in this Court seeking relief from the automatic stay of Section 362 of the Bankruptcy Code to dispose of all of the repossessed vehicles. Huckabee Auto Company filed defensive pleadings to the adversary proceeding and also asserted a counterclaim against GMAC seeking a return of the repossessed vehicles. This adversary proceeding was settled between the parties by a consent order of this Court dated February 22, 1980, and this settlement resulted in GMAC returning to

Huckabee Auto Company the vehicles which previously had been repossessed.

On March 18, 1980, Debtors jointly initiated an adversary proceeding in this Court against the Georgia Bank & Trust Company, hereinafter the Georgia Bank, for the purpose of recovering certain assets belonging to Debtors but held by the Georgia Bank, and determining the extent and priority of certain claims of the Georgia Bank against Debtors' assets, as well as seeking a recovery of $231,783.27 alleged to be owed to Huckabee Auto Company by the Georgia Bank. The alleged claim of Huckabee Auto Company in the amount of $231,783.27 was contended to have existed due to the Georgia Bank's failure to honor certain checks payable to GMAC and written by Huckabee Auto Company, which dishonor was alleged to have occurred on or about January 7, 1980. Upon the motion of the Georgia Bank, GMAC was added to this adversary proceeding as a party by order of this Court dated April 4, 1980. The Georgia Bank, on April 7, 1980, responded to the adversary proceeding through motion, and on May 1, 1980, GMAC filed its answer, and also asserted a cross claim against the Georgia Bank.

GMAC subsequently filed a separate action against the Georgia Bank in the United States District Court for the Middle District of Georgia, which action asserted its claim to the $231,783.27 in allegedly improperly dishonored checks.

This Court's adversary proceeding and the District Court action were settled by an agreement dated June 18, 1980, which agreement was between Debtors, the Georgia Bank, Mrs. Randall A. Huckabee, and GMAC. On July 10, 1980, this settlement agreement was approved by order of this Court.

The Court notes the following language contained in the June 18 settlement agreement which is applicable to the issue before the Court:

[1.01] (d) "GMAC Subordinated Secured Debt" refers to all other indebtedness of the Company to GMAC in the amount of $100,346.07 which arose from pre-filing

obligations of the Company, except GMAC Floor Planning Loan No. 1.

. . . .

2.03. *GMAC Collateral.*

(a) The Company agrees and acknowledges that the GMAC Floor Planning Loan No. 2 and the GMAC Secured Debt No. 1 will be secured by liens on that certain collateral described in Exhibit "E" attached hereto and by reference made a part hereof evidenced by the Company's and Huckabee Properties' execution of various debt and security instruments necessary to grant GMAC a junior and secondary security interest therein. The Company also agrees, acknowledges and reaffirms the security interests held by GMAC in vehicles, office and shop equipment and holdbacks as set forth in the Stipulation of February 22, 1980. GMAC agrees to release its security interest in each item of collateral on Exhibit "H" at the Closing of the sale thereof, at which time the proceeds therefrom will be distributed pursuant to Article IV and paragraph 2.05 hereinbelow for the purpose of delivering good title to the purchaser.

(b) The Company agrees and acknowledges that the GMAC Subordinated Secured Debt in the amount of $100,346.07 will be secured by the property described in Exhibit "E".

. . . .

[2.06] (e) The Company agrees that the GMAC Subordinated Secured Debt will be dealt with by the Company in the Plan and paid the same percentage at the same time as is provided for unsecured claims of the Company after which GMAC shall retain a secured claim for any balance owed, secured by a lien on any remaining collateral owned by the Company in which GMAC holds a security interest, which security interest shall Be Released upon payment of the GMAC Subordinated Secured Debt.

. . . .

7.01. All parties hereto agree that this Settlement Agreement may be incorporated into and form the basis of any Plan

of Reorganization filed by the Debtors or any of them with the Court, and GMAC, the Company, Huckabee Properties and the Georgia Bank agree not to file any plan that modifies this Settlement Agreement.

Debtors' plan of reorganization in Article II contains the following classifications which are relevant to the issue before the Court:

### CLASS 2—CLAIM OF GENERAL MOTORS ACCEPTANCE CORPORATION (GMAC).

### CLASS 7—CLAIMS OF GENERAL UNSECURED CREDITORS.

Debtors' plan of reorganization in Article IV provides the following treatment for these Class 2 and Class 7 claims:

#### CLASS 2

The claims of GMAC will be treated in accordance with the terms and conditions of the Settlement Agreement. It is the intention of the Debtors that the Settlement Agreement be incorporated herein without modification. The claims of GMAC are divided into five classifications therein, and pursuant to the Settlement Agreement, the Debtors are required to remit payments from time to time on the various GMAC obligations. The "GMAC Subordinated Secured Debt" as defined in the Settlement Agreement shall be treated in Class 7 hereunder.

#### CLASS 7

(1) If the SBA loan is approved, the Debtors shall pay to the general unsecured creditors in this class, in full settlement of their claims, fifteen per cent (15%) of the allowed amount of each of their respective claims in cash on the effective date of the Plan.

(2) If the SBA loan is not approved, the Debtors will issue promissory notes in full settlement of the claims of creditors in Class 7 the terms of which shall provide for payment in five (5) equal and annual payments; the first payment will be 4% of the principal balance of each allowed claim and shall be made on July 1, 1981. Each note shall aggregate 20% of the allowed amount of each claim, and the initial and each successive installment shall be 4% of each allowed claim.[1]

### CONCLUSIONS OF LAW

This Court has jurisdiction over the matters considered herein, 28 U.S.C. § 1471, and the Creditors' Committee is an interested party which may object to confirmation of Debtors' plan pursuant to 11 U.S.C. § 1128(b).

■ The Creditors' Committee objects to Debtors' plan of reorganization on the ground of feasibility,[2] and also on the ground of inappropriate participation of a Class 2 claimant in Class 7, which is alleged to be detrimental to general unsecured creditors.

■ Section 1122 of the Bankruptcy Code deals with classification of claims in a reorganization case, and reads as follows:

§ 1122. Classification of claims or interests

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if

---

1. Testimony at the hearing on confirmation discloses that Huckabee Auto Company will not be receiving a loan from the Small Business Administration, but testimony at the confirmation hearing discloses another source of funding from which Debtors propose to fund this 15 percent payment to Class 7. The source is a $100,000.00 loan from Mrs. Randall A. Huckabee.

2. While the Court need not reach the issue of feasibility, the Court feels obligated to comment in general on the matter of feasibility. 11 U.S.C. § 1129(a)(11) contains what is often-

times referred to as the feasibility standard, and to meet this requirement of confirmation, requires a finding of financial stability. This is not a guaranty of success, but a reasonable expectation of success. This requires testimony about capital structure, earning power, economic conditions, ability of management, and in general, any matter relevant to the prospect of success. 5 *Collier on Bankruptcy* ¶ 1129.-02[11] (15th ed. 1981). Whether Debtors have made a sufficient showing to meet this burden would be of serious concern to the Court if the question of feasibility had to be reached.

such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

This section codifies previous case law on classification, and should be construed in light of that case law. Cf. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 406 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; 5 *Collier on Bankruptcy* ¶ 1122.03 (15th ed. 1981).

■ Section 1122 does not require the inclusion of claims within classes, but provides only that all claims placed within a class must be substantially similar. *Id; Scherk v. Newton (In re Rocky Mountain Fuel Co.),* 152 F.2d 747 (10th Cir.1945); *Seidel v. Palisades-On-The-Desplaines (In re Palisades-On-The-Desplaines),* 89 F.2d 214 (7th Cir.1937).

Article II of Debtors' plan classifies the GMAC claim in Class 2 and classifies general unsecured claims in Class 7.

In order to properly understand the claim of GMAC, the Court must refer to the June 18, 1980 settlement agreement which by reference is incorporated into the terms of the Debtors' plan, and serves to define the claim of GMAC. Article I of the June 18 settlement agreement discloses that the claim of GMAC is founded upon five separate obligations, which are as follows:

(b) "GMAC Secured Debt No. 1" refers to that certain obligation of the Company to GMAC in the principal amount of $231,783.27.

(c) "GMAC Secured Debt No. 2" refers to those obligations of the Company to GMAC secured by service trucks and equipment in the principal amount of $37,353.44.

(d) "GMAC Subordinated Secured Debt" refers to all other indebtedness of the Company to GMAC in the amount of $100,346.07 which arose from pre-filing obligations of the Company, except GMAC Floor Planning Loan No. 1.

(e) "GMAC Floor Planning Loan No. 1" refers to loans made by GMAC to the Company to finance purchase of new and used automobiles, evidenced and secured by various loan agreements and other collateral security instruments executed by the Company.

(f) "GMAC Floor Planning Loan No. 2" refers to loans to be made by GMAC to the Company to finance the purchase of new and used vehicles to be evidenced and secured by various loan agreements and collateral security instruments executed by the Company and as provided in paragraph 2.03(a).

Settlement Agreement, June 18, 1980, *In re Huckabee Auto Co.,* Case No. 80–00151–Mac, file 2 (Bkrtcy.M.D.Ga.).

All of these five separate obligations compose the GMAC Class 2 claim and are dealt with under the terms of the settlement agreement as to their nature and method of payment.

For the purpose of making the decision which is presently before the Court, the Court need only look to the "GMAC Subordinated Secured Debt," and therefore no consideration need be given to the other four obligations.

The GMAC Subordinated Secured Debt is, by its definition in the settlement agreement, in the amount of $100,346.07, and represents an obligation which arose from pre-filing obligations. In Section 2.03 of the settlement agreement, the debt is secured by property which is described in Exhibit "E" to the settlement agreement, and which in general terms gives to GMAC, as collateral for this subordinated secured debt, a security interest in 11 pieces of real estate, and a security interest in equipment and machinery. Thus, the GMAC Subordinated Secured Debt is, under the terms of the June 18 settlement agreement, a secured debt.

Since the Class 7 claims are general unsecured claims, it is appropriate that this se-

cured debt of GMAC be placed in a separate classification.[3] Accordingly, the classification of Class 2 and Class 7 claims is found not to violate 11 U.S.C. § 1122.

The Creditors' Committee specifically objects to the plan's treatment of the Class 2 GMAC Subordinated Secured Debt within Class 7 of the plan, and after consideration of this ground of objection, the Court finds that it must be sustained.

Article IV of Debtors' plan of reorganization provides for the treatment of all claims within the plan, and specifically provides that the Class 2 claim of GMAC will be treated in accordance with the terms and conditions of the settlement agreement. This treatment is then conditioned by additional language which specifies that the GMAC Subordinated Secured Debt is to be treated in Class 7. Thus, Debtors have placed the GMAC Subordinated Secured Debt in Class 2, which is appropriate, but have elected to treat it in Class 7.[4] This is contrary to the basic fairness requirement of Chapter 11 of the Bankruptcy Code, and cannot be permitted by this Court.

Basic fairness is provided in the Bankruptcy Code by the requirements for confirmation of a plan of reorganization found in 11 U.S.C. § 1129. If the technical requirements of 11 U.S.C. § 1129(a) are met, and all classes accept the plan of reorganization, the Court need not concern itself with the "fair and equitable" requirement of 11 U.S.C. § 1129(b), but if there are impaired classes which reject the plan, then fairness and equity are of great concern to the Court. This scheme is consistent with one of the overall purposes of the Bankruptcy Reform Act of 1978 which makes the bankruptcy court a decider of controversies and not the supervisor and administrator of bankruptcy estates.

Since the Court does not become involved until controversies arise, it is necessary that the parties in interest be protected within the statutory provisions of the Code, and to insure this, Chapter 11 of the Bankruptcy Code is based on a system that allows properly notified parties to negotiate, participate and protect their own interests throughout the development and implementation of the plan of reorganization. One of the basic rights of creditors which affords them protection, is their right to vote to either accept or reject the plan of reorganization. If a class accepts the plan, there is no reason for court action, but if a class rejects the plan, it is the court's duty to insure that the rejecting class is not unfairly discriminated against, and is being treated fairly and equitably. 11 U.S.C. § 1129(b). This system works only if the standards set by the Code on classification, treatment, and voting are followed precisely, not only in form, but in spirit. To allow otherwise would enable debtors to engineer plans to unfairly affect the rights of creditors.

To protect rejecting classes and to assure that the subsections of Section 1129 function properly, the Bankruptcy Code contains certain guidelines concerning classification, treatment and voting which must be followed.

The first guideline is found in Section 1122 of the Bankruptcy Code, which requires all claims, classed together, to be

---

**3.** It should also be noted here that since the legal rights between GMAC and Debtors are established by the settlement agreement, and Debtors' plan does not alter the rights established therein, in actuality this claim is unimpaired by Debtors' plan. 11 U.S.C. § 1124 provides that a claim is unimpaired if the plan leaves unaltered the legal, equitable, and contractual rights of such claim, and since Debtors have elected to have the claim of GMAC dealt with exclusively by the settlement agreement, it is difficult for the Court to see how the claim of GMAC is impaired by Debtors' plan. Compare this to Class 7 which is obviously impaired because the plan proposes to pay only 15 percent of these claims.

**4.** Debtors' counsel reported to the Court during the confirmation hearings that for the voting requirements of 11 U.S.C. § 1126 to be met for the Class 7 claims, the GMAC Subordinated Secured Debt would have to be included within Class 7. Thus, if the GMAC Subordinated Secured Debt is not included within Class 7, that class will have voted to reject Debtors' plan of reorganization.

substantially similar. This requirement insures that classes of claims will have similar interests, and that votes cast by the class will reflect the joint interests of the class. It thus assures that large claims of a different legal nature are not classed with other claims so as to enable the improperly classed claims to dictate to the other claims.

The second guideline is similarity of treatment within a class, and is found in Section 1123(a)(4) of the Bankruptcy Code. This section restates the cardinal principle of bankruptcy practice in that all claims within a class should be treated equally. 5 *Collier on Bankruptcy* ¶ 1123.01[4] (15th ed. 1981). If they are treated the same, free unprejudiced voting of their claims is assured on whether their treatment is fair and equitable within the entire scheme of bankruptcy. To permit a plan to treat one claim within a class more favorably than others without the consent of the others, would be for the Court to sanction the engineering of plans which violate the principle of fairness and equity.

The third guideline is acceptance of the plan based on both the size and number of claims within a class. This guideline insures that acceptance of a plan will reflect the feelings of a sufficient number of claims of a class of a sufficient monetary amount to make it fair and equitable for all the members of the class. It is set out in Section 1126(c) of the Bankruptcy Code, which provides:

> (c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

It can easily be seen from the guidelines that the Chapter 11 process is founded upon equality. To allow a claim to be classified in one class, and participate in another would subvert the entire system of Chapter 11.

In this case, Debtors have classified GMAC in Class 2 consistent with its secured status, but they then want this substantial claim to participate, vote, and in general be treated in a separate class. This would allow the GMAC claim to affect two separate classes. GMAC would thus be able to vote its GMAC Subordinated Secured Debt claim with the claims of unsecured creditors, and still be paid in full unlike these unsecured creditors. This violates the very nature of fair and equitable treatment.

If the GMAC Subordinated Secured Debt is a member of Class 2, it must participate in the plan, vote, and be treated under the plan in Class 2. It must also be similar in nature to the other claims in Class 2, and it must receive the same treatment as the other claims within Class 2.

If the GMAC Subordinated Secured Debt is to participate in the plan, vote, and be treated under the plan in Class 7, it must be treated similarly to the other claims of Class 7, and must be substantially similar in nature to the other claims of Class 7.

Debtors' plan of reorganization proposes that the GMAC Subordinated Secured Debt vote and participate in Class 7. This unfairly discriminates against the other claimants within that class and cannot be permitted. Only by requiring that a claim, once properly classified, participate in the plan of reorganization within that class, can the court expect to enforce the rule of fair and equitable treatment which is so basic to Chapter 11 and the bankruptcy process.

If GMAC is allowed to participate in Class 7 with its subordinated secured debt, then the plan is accepted by the vote of the class, but if this GMAC obligation does not vote within Class 7, then the plan is not accepted by the vote of the class. Debtors' plan of reorganization, in effect, asks this Court to force acceptance upon Class 7 by participation of a Class 2 obligation, and for this Court to permit such a scheme would be for this Court to ignore its responsibilities as a court of equity.

Debtors contend that the Creditors' Committee, by its participation through its counsel in hearings on the settlement agreement, disclosure statement, and confirmation, has waived its right to object to the proposed treatment of the GMAC Subordinated Secured Debt. The Court finds no merit in this contention. To hold that an interested party, here the Creditors' Committee, waives its right to object to a plan by its participation in matters preliminary to the confirmation process would severely limit the flexibility of counsel in representing a client during the Chapter 11 process.

It should be noted that the disclosure statement is designed by the Bankruptcy Code to be an informative mechanism from which interested parties can decide whether to accept or reject a proposed plan of reorganization. Section 1128(b) of the Bankruptcy Code, 11 U.S.C. § 1128(b), gives to parties in interest the unqualified right to object to confirmation of a plan. The Court finds no conduct in this case by the Creditors' Committee from which it should find a waiver of this right to object.

Debtors further urge that the June 18 settlement agreement, which has been approved by order of this Court, requires that the GMAC Subordinated Secured Debt be treated in Class 7. The Court also finds no merit in this contention because contrary to the contentions of Debtors, the settlement agreement merely requires that the GMAC Subordinated Secured Debt be paid the same percentage at the same time as is paid to general unsecured creditors, and makes no requirement for its participation in Class 7. Settlement Agreement, June 18, 1980, § 2.06(e), *In re Huckabee Auto Co.,* Case No. 80–00151–Mac, file 2 (Bkrtcy.M.D.Ga.).

In conclusion, the Court will not speculate as to why Debtors have attempted to have the GMAC Subordinated Secured Debt participate in Class 7 of their plan of reorganization, but by doing so they have interjected into their plan an element which is contrary to the basic spirit of Chapter 11 of the Bankruptcy Code.

Accordingly, the objection of the Creditors' Committee must be sustained, and the confirmation of Debtors' plan will be denied.