In re N.S. GARROTT & SONS, An Arkansas General Partnership, Debtor-in-Possession.

In re EASTERN ARKANSAS PLANTING COMPANY, An Arkansas General Partnership, Debtor-in-Possession.

Nos. JO83–215M, JO83–216M.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 7, 1984.

Richard Frockt, Louisville, Ky. and James E. Smith, Jr., Little Rock, Ark., for debtor-in-possession.

## ORDER DENYING CONFIRMATION

JAMES G. MIXON, Bankruptcy Judge.

On December 12, 1983 N.S. Garrott & Sons, an Arkansas general partnership consisting of N.S. Garrott, Jr. and James L. Garrott, filed a petition for relief under the provisions of Chapter 11 of the Bankruptcy Code. On November 15, 1983 Eastern Arkansas Planting Company, an Arkansas general partnership consisting of William Montgomery and J.L. Garrott, Jr., filed for relief under the provisions of Chapter 11 of the Bankruptcy Code. According to the file, notice of a hearing on motions for joint administration was then sent to the secured creditors only. The motions were sent in N.S. Garrott & Sons (JO 83–215); Eastern Arkansas Planting Company (JO 83–216); and a third case styled N.S. Garrott & Sons and Eastern Arkansas Planting Company, a joint venture (JO 83–214), which was filed by the same debtors. An order was entered *ex parte* on February 9, 1984 ordering that the three cases be jointly administered and recited that no creditor objected.

The schedules in Eastern Arkansas Planting Company (JO 83–216) show the following:

| | |
|---|---|
| Secured Claims | $6,712,341.60 |
| Unsecured Claims | $1,171,335.33 |
| TOTAL CLAIMS | $7,883,676.93 |
| Value of Real Property | $4,713,000.00 |
| Value of Personal Property | $2,216,350.17 |
| TOTAL ASSETS | $6,929,350.17 |
| NET WORTH | [$ 954,326.76] |

These schedules reflect that this debtor is insolvent, and the schedules list, among other things, assets as follows: stock of The Federal Land Bank valued at $66,500.00, apparently owned by Mrs. Evelyn Montgomery, mother of William Montgomery; $304,229.44 escrow with Union Planters National Bank of Memphis and apparently owned by Mrs. Montgomery; and 320 acres of farmland owned by Mrs. Montgomery and valued at $750,000.00. The schedules also reveal that Evelyn P. Montgomery is an unsecured creditor in the sum of $108,130.74, and the schedules reflect that N.S. Garrott & Sons is a general unsecured creditor for $870,506.98. N.S. Garrott & Sons is also shown as a secured creditor by virtue of its ownership of one-half interest in a model 4840 John Deere tractor and one-half interest in a model 7100 John Deere six-row planter.[1]

The John Deere Company is shown as a secured creditor with a secured claim of $516,337.78.

The schedules of N.S. Garrott & Sons show the following:

| | |
|---|---|
| Secured Claims | $6,483,034.97 |
| Unsecured Claims | $  183,254.66 |
| TOTAL CLAIMS | $6,666,289.63 |
| Value of Real Property | $3,500,000.00 |
| Value of Personal Property | $4,212,594.88 |
| TOTAL ASSETS | $7,712,594.88 |
| NET WORTH | $1,101,175.14 |

The schedules show, therefore, that this debtor is solvent.

The schedules reveal notes receivable from Eastern Arkansas Planting Company of $894,570.38 and show a cash asset of $1,537,721.09 invested in treasury bills. John Deere is shown as being a secured creditor in the sum of $490,307.78.

This court, on motion of the debtor, dismissed JO 83–214, the joint venture case, prior to the confirmation hearing.

A disclosure statement was approved on August 27, 1984, after notice and a hearing as required by 11 U.S.C. § 1125, and a

---

1. This makes no sense. N.S. Garrott & Sons is not properly a secured creditor, if this is based on a claim of ownership of property in the possession of Eastern Arkansas Planting. This should have been scheduled under question no. 9 in the statement of affairs, "Property Held for Another Person."

confirmation hearing was set for September 19, 1984 in Jonesboro. The plan treats the two cases as if they have been substantively consolidated.

Objections to confirmation were filed by International Harvester Credit Corporation, John Deere Company, Union Planters National Bank, Federal Land Bank of St. Louis, United States of America, and Chicago Title Insurance Company. At the confirmation hearing, all objections were withdrawn except the objections of Chicago Title and John Deere, each of whom declined to approve the plan. Having failed to obtain the approval of all the creditors required by 11 U.S.C. § 1129(a)(8), the debtors orally moved that the plan be nonetheless confirmed under 11 U.S.C. § 1129(b). At the conclusion of the evidence, the court denied confirmation and this Memorandum constitutes the reasons why.

■ For a plan of reorganization under Chapter 11 to be confirmed the requirements of 11 U.S.C. § 1129 must be met. This section has eleven prerequisites for confirmation and all must be met except no. 8, which provides that each class must accept the plan or be unimpaired. A plan may still be confirmed over the objections of one or more classes if the plan nevertheless satisfies all of the other requirements of § 1129(a) and the cram down standards set forth in § 1129(b). The court has a mandatory duty to determine whether the plan has met all of the requirements for confirmation, whether specifically raised by dissenting creditors or not. *S & W Enterprise, A Partnership,* 37 B.R. 153 (Bkrtcy. 1984); *In Re Toy & Sports Warehouse, Inc.,* 37 B.R. 141 (Bkrtcy.1984); *In Re Coastal Equities, Inc.,* 33 B.R. 898 (Bkrtcy.1983); *In Re Sullivan,* 26 B.R. 677 (Bkrtcy.1982); *Matter of Nikron, Inc.,* 27 B.R. 773 (Bkrtcy.1983); *In Re Maxim Industries, Inc.,* 22 B.R. 611 (Bkrtcy.1982); *In Re Economy Cast Stone Company,* 16 B.R. 647 (Bkrtcy.1981); 5 *Collier on Bankruptcy* ¶ 1129.03 (15th Ed.1982).

■ The plan does not comply with § 1129(a)(1) which requires that it comply with the applicable provisions of Title 11. 11 U.S.C. § 1123 provides in part as follows:

(a) A plan shall—

(1) designate subject to section 1122 of this title classes of claims other than claims of a kind specified in § 501(a)(1), § 507(a)(2), or § 507(a)(6) of this title and classes of interest;

(2) specify any class of claims or interests that is not impaired under the plan;

(3) shall specify the treatment of any class of claims or interests that are impaired under the plan;

(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.

The plan incorrectly designates the class of interest holders to be the two debtor-partnerships. This is simply incorrect. The class of interest holders are the individual general partners of the two debtors and they are William Montgomery, N.S. Garrott, Jr., J.L. Garrott, and J.L. Garrott, Jr. Furthermore, the treatment of the claims of the interest holders is incomplete. The plan only provides for income to the holders of claims of interest and does not provide for the vesting of the respective partnership interest. The plan is silent on the subject of who the partners will be and their respective interests in the reorganized debtor. In 5 *Collier on Bankruptcy* ¶ 1123.01 (15th Ed.) it is stated:

The House Report and Senate Report both describe section 1123(a)(1) as follows:

'The plan must designate classes of claims and interest, and specify, by class, the claims or interest that are unimpaired under the plan.'

With the exception of Section 507(a)(1), (a)(2) and (a)(6) claims, every claim *and interest* in a chapter 11 must be placed in a class and every class must be designated impaired or unimpaired. If a class is impaired, section 1123(a)(3) requires that

the plan specify how the plan proposes to treat the class.

Here, the claims of the general partners have the lowest priority of distribution under the Bankruptcy Code and constitute a class of interest. The claim of interest holders are junior to claims of creditors of the partnerships, and further, as illustrated in a Chapter 7, 11 U.S.C. 723(a) provides that each general partner in a partnership is personally liable for the full amount of any administrative expense and for all claims against the partnership. *In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bkrtcy.1982); *see, also,* 11 U.S.C. 726(a)(6). Failure to provide for a class of interest holders and its treatment renders impossible a correct consideration of the absolute priority rule and its application in a cram down hearing under § 1129(b)(2)(B)(i)(ii). *See, e.g., In re Landau Boat Co.,* 8 B.R. 436 (Bkrtcy.1981); *In re Mastercraft Record Plating, Inc.,* 32 B.R. 106 (Bkrtcy. 1983); *In re Pine Lake Village Apartment Co., supra; Matter of Huckabee Auto Co.,* 33 B.R. 141 (Bkrtcy.1981).

■ To illustrate the importance of listing a class of interest, if no provision is made in the plan for holders of interest, then it would seem that their interest would be terminated by confirmation. Unlike Chapter 13 where discharge of debts not paid under the plan occurs only after successful completion of the plan, the Order of Confirmation in a Chapter 11 discharges the debtor's obligations except as provided in the plan both as to creditors and interest holders without regard to whether the debtor pays according to the plan or not. *See,* 11 U.S.C. § 1141.[2] Therefore, if this plan had been confirmed as presented and thereafter the case dismissed, the interest holders could well have been surprised to learn that they no longer owned any interest in the various properties of the debtor, including exempt property.

5 *Collier on Bankruptcy* ¶ 1141.01 p. 1141–5 states:

> Subject to compliance with the requirement of due process under the Fifth Amendment a conformed [sic] plan of reorganization is binding upon every entity that holds a claim or interest [12] ...

[12] The Code does not define the term interest but such term is used to subsume the ownership interest of an individual debtor in his property, the interest of equity security holders as defined in § 101(15) and interests of general partners in a debtor-partnership.

■ John Deere Co. is a creditor and holds both a secured and an unsecured claim. No § 1111(b) election was made, therefore, John Deere holds a Class B–6 secured claim to the extent of the value of its collateral and a Class C unsecured claim for the balance. The plan proposes to treat John Deere's secured claim by paying it in even installments over five years based upon a seven-year amortization with interest at the rate of 12% per annum. It is not disputed that the claim is impaired.

The plan further provides that the payments to John Deere will be due *on or about* December 15 of each plan year. The plan then contradicts itself and says that all the farm machinery securing this claim will be sold at the conclusion of the fourth year of the plan but does not say who is to receive the proceeds. Under the section "Means for Execution" the plan states that the installment payments commence on December 15, 1984.

The plan is incomprehensible in its description of the treatment of Class C unsecured claims, in that the plan does not articulate whether this class is to be paid in full or not, but speaks only in terms of pro rata distribution from profits to be earned in the future and from the proceeds of certain pending litigation, assuming a favorable outcome. N.S. Garrott & Son is an unsecured creditor of Eastern Arkansas Planting and is, therefore, a Class C creditor and is entitled to distribution under the

**2.** House Report No. 95–595, 95th Cong., U.S. Code Cong. & Admin.News 1978, pp. 5787, 6374. "Unless the plan or the order confirming the plan provides alternatives, the confirmation of

the plan vests all of the property of the estate in the debtor and releases it from all claims and interests of creditors, equity security holders and general partners.

consolidated plan. It is not explained how mechanically this is to be accomplished.

John Deere did not vote to accept the plan, and John Deere was the only claim in Class B–6. Therefore, if the plan is to be confirmed it must be confirmed under the cram down provisions as contained in § 1129(b)(2)(A)(i)(I) and (II). John Deere's unsecured claim is a Class C unsecured claim and although John Deere voted against the plan a sufficient number of other members of the class voted to accept, therefore, no cram down was required as to Class C unsecured claims. The plan must, however, meet the requirements of 11 U.S.C. § 1129(a)(7) as to John Deere's unsecured claim.

To meet the requirements of § 1129(b)(2)(A)(i)(I) and (II) the plan, as to Class B–6, must do three things. First it must provide for retention by John Deere of its lien. Second, the total stream of deferred cash payments proposed by the plan must at least total the amount of the secured claim. Third, the total stream of payments must have a value equal to the value of the property. *Matter of Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (Bkrtcy.1980).

The first requirement is not met because the plan did not propose that John Deere retain its lien, and the third requirement is not met because the plan does not propose to pay the "present value" of the secured claim. 5 *Collier on Bankruptcy* ¶ 1129.-03(1) describes present value as follows:

> The concept of 'present value' is of paramount importance to an understanding of § 1129(b). Simply stated, 'present value' is a term of art for an almost self-evident proposition: a dollar in hand today is worth more than a dollar to be received a day, a month, or a year hence. Part of the 'present value' concept may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (i) a dollar to be received a day, a month, or a year hence plus (ii) the rate of interest which the dollar would earn if invested at an appropriate interest rate.

This is construed to be the current interest rate or market rate of interest. *Matter of Landmark at Plaza Park, Ltd., supra; Matter of Southern States Motor Inn, Inc.*, 709 F.2d 647 (11th Cir.1983). The uncontradicted proof is that the 12% rate which is proposed is less than the current market rate. Paradoxically, the debtor proposes the correct method of determining the current market rate in its treatment of some other secured creditors, such as the claim of Federal Land Bank. Other arguments are advanced by John Deere regarding the timing of proposed payments under the plan, but in view of the several reasons the plan cannot be confirmed, these arguments will not be considered here since they may or may not arise in the context of a new plan.

### Consolidation

Early in the case both of the debtors petitoined for a "joint administration" under Rule 1015. Both debtors are represented by the same counsel, and both motions were set for hearing at the same time, and the motions were granted without objection of any creditor by order of this court dated February 8, 1984.

The purpose of joint administration is that pleadings that ordinarily would be duplicated and placed in both debtors' files are being filed in N.S. Garrott & Sons, No. JO 83–215. This plan of reorganization, however, is based on substantive consolidation, which means assets and liabilities of both debtors are pooled. It is, therefore, proposed that assets of the one solvent estate will be utilized to pay creditors of the insolvent estate. This is permissible only if the court has approved the substantive consolidation of the debtors. Here, there has been no such approval.

The disclosure statement and plan were filed and the essence of the plan submitted was based on substantive consolidation of both estates. The court has examined a number of cases involving substantive consolidation. *See, In re Continental Vending Machine Corp.*, 517 F.2d 997 (2d Cir. 1975); *Soviero v. Franklin National*

*Bank of Long Island,* 328 F.2d 446 (2d Cir.1964); *Stone v. Eacho,* 127 F.2d 284 (4th Cir.1942); *In re Alpha & Omega Realty, Inc.,* 36 B.R. 416 (Bkrtcy.1984); *In re F.A. Potts & Co., Inc.,* 23 B.R. 569 (Bkrtcy. 1982); *In re Snider Bros., Inc.,* 18 B.R. 230 (Bkrtcy.1982); *Matter of Lewellyn,* 26 B.R. 246, 3 C.B.C.2d 1060 (1982); *In re D'Avignon,* 34 B.R. 790 (Bkrtcy.1981); *In re Richton Intern. Corp.,* 12 B.R. 555 (Bkrtcy. 1981); *In re Food Fair, Inc.,* 10 B.R. 123 (Bkrtcy.1981); *In re Vecco Const. Industries, Inc.,* 4 B.R. 407 (Bkrtcy.1980); *In re Coventry Energy Corp.,* 5 B.C.D. 98 (1979); *In re Commercial Envelope Manufacturing Co., Inc.,* 3 B.C.D. 647 (1977).

Almost all of these cases involve this procedure:

A. Filing of related petitions;

B. Application for and approval of joint administration; and

C. Application for and hearing on motion for substantive consolidation.

Included in the afore-cited cases is an underlying philosophy that consolidation is not warranted simply because no objection was made by any creditor. *In re Snider Bros., Inc., supra; In re Food Fair, Inc., supra; In re Coventry Energy Corporation, supra.* Every case cited made note of the bankruptcy court's obligation to make independent inquiry into the necessity and desirability of substantive consolidation. The cases also speak of the "elements of consolidation" and "standards of proof" in any consolidation issue. *In re Snider Bros., Inc., supra; In re Food Fair, Inc., supra; In re Vecco Const. Industries, Inc., supra.*

The factors consistently considered by the courts in deciding whether substantive consolidation is appropriate include:

A. Necessity of consolidation due to interrelationship among debtors;

B. Whether the benefits of consolidation outweigh the harm to creditors; and

C. Prejudice that will result from lack of consolidation.

Furthermore, the burden of proof for those seeking consolidation is substantial. *In re Snider Bros., Inc., supra.* The above factors have never been analyzed herein, nor has any party borne the burden of proof because there has never been a motion for or a hearing on substantive consolidation.

■ What is more, the procedure for achieving substantive consolidation utilized by these debtors circumvents basic due process. Not one word concerning substantive consolidation appears in either the plan or disclosure statement. The plan is proposed as if these were not two separate debtors. The proper procedure for consolidating cases, while at the same time satisfying due process, was the topic of an article by Charles Seligson and Charles F. Mandell in 73 *Commercial Law Journal* 341 (1968) wherein it was stated:

In cases of substantive consolidation, the courts have generally satisfied the requirements of procedural due process of law. Thus, creditors of the entities sought to be consolidated have as a rule been given due notice of the application to consolidate their debtors with the concomitant right to be present at the hearing on the application; the right to be heard, by testimony or otherwise; and the right to controvert by proof, every material fact which bears on the issue involved. In short, creditors have been given the opportunity to participate in an 'adversary proceeding.' "Multi-Debtor Petition-Consolidation of Debtors and Due Process of Law," 73 *Commercial Law Journal* 341 (1968).

Substantive consolidation must be considered, for instance, in the context of the plan's treatment of Class C unsecured creditors. The plan is vague at best as to this class and seems to hold out the prospect for full payment only on the favorable resolution of contingencies in the future. Such treatment would seem patently unfair to the unsecured creditors of N.S. Garrott & Sons, which is solvent and would, therefore, appear to violate the provisions of 11

U.S.C. § 1129(a)(7) as to the unsecured claim of John Deere.

 Finally, these cases represent for counsel a real potential for conflict of interest. While many of the creditors are the same, there are both different creditors and different assets in each case. Furthermore, substantial assets in one case are of a more liquid quality than in the other. Counsel for the two debtor estates—which are both debtors and creditors as to each other—also represent the interest holders of each estate. Each debtor estate holds an interest adverse to the other. The interest holders hold claims adverse to each estate; they are potential defendants in actions which might have to be brought in the name of the estates in the event there is a deficiency to pay all claims of creditors in full. Under the Bankruptcy Code the debtor-in-possession is a fiduciary for the creditors of each estate and attorneys can be counsel only if they do not represent interests adverse to the estate. In the court's view it is impossible to represent all of these competing claimants to different assets in different cases at the same time without sacrificing one entity's interest for another's.

Confirmation is denied and the case will be automatically dismissed unless within thirty (30) days from the entry of this order a motion to convert is filed, or unless a party in interest submits a new plan of reorganization or files a motion for appointment of a trustee.

IT IS SO ORDERED.