**In re HOLLEY GARDEN APARTMENTS, LTD., Debtor.**

**Bankruptcy No. 97–07458–6B1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 4, 1999.

Kenneth D. Herron, Jr., Orlando, FL, for Debtor.

Jeffry R. Jontz, Orlando, FL, for Condor One, Inc.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on Confirmation of Debtor's, Holley Garden Apartments, Ltd., Third Amended Plan of Reorganization, dated August 19, 1998; the Objection by Condor One, Inc. to Confirmation of Debtor's Third Amended Plan of Reorganization; the Confirmation of Condor One, Inc.'s Plan of Reorganization; and the Objection by Debtor, Holley Garden Apartments, Ltd., to Confirmation of Condor One, Inc.'s Plan of Reorganization. Appearing were Kenneth D. Herron, Jr., counsel for the Debtor; and Jeffrey R. Jontz, counsel for Condor One, Inc. After reviewing the pleadings, evidence, and exhibits and hearing testimony and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtor, Holley Garden Apartments, Ltd. ("Debtor"), is a limited partnership, organized and existing under the laws of the State of Florida. Debtor was formed in 1979. The primary asset of Debtor is the Holley Garden Apartments located at 3435 S. Orange Ave., Orlando, Florida.

Debtor purchased the apartment complex in 1979 and has owned and operated the apartment complex continually since that date.

The apartment complex is comprised of 16 two-story, masonry construction buildings, containing 258 one-bedroom apartment units. One hundred and twenty units are 430 square feet, and 138 units are 530 square feet. The property consists of approximately 9.9 acres of land.

The general partner of Debtor is Philip C. Grace ("Grace"). Debtor also has two limited partners, which are Grace Properties No. 25, Ltd. and Grace Properties No. 29, Ltd. Grace or an entity that he controls serves as the general partner of the two limited partners.

Debtor filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., on September 11, 1997. (Doc. 1). The primary creditor in the case is Condor One, Inc. ("Condor"), which holds a mortgage on Debtor's real property and a security interest in Debtor's personal property.

Debtor filed a Plan of Reorganization and Disclosure Statement on December 1, 1997, which were amended on February 9, 1998. (Docs. 39, 40 and Docs. 94, 95). Condor filed a Plan of Reorganization and Disclosure Statement on March 11, 1998. (Docs. 115, 116). Debtor's plan of reorganization separately classified the unsecured deficiency claim of Condor. Debtor's Motion to Allow Separate Classification was denied on April 6, 1998, and Debtor was granted ten days to file an amended plan and disclosure statement. (Doc. 123). Debtor filed a Second Amended Plan of Reorganization and Disclosure Statement on May 4, 1998, and a Third Amended Plan of Reorganization and Disclosure Statement on August 19, 1998. (Docs. 133, 134 and Docs. 166, 167).

An order approving the disclosure statements filed by Debtor and Condor was entered on November 13, 1998. (Doc. 187). The order provided, in part, that both plans and disclosure statements be served on all parties, that a single ballot form be used for both plans, and that the ballot form provide a place for parties to indicate their preference either for the plan proposed by Debtor ("The Holley Plan"), or the plan proposed by Condor ("The Condor Plan"). Condor's solicitation letter was to be reviewed by Debtor's counsel prior to dissemination, in order to provide Debtor an opportunity to object. Condor failed to provide Debtor an opportunity to review the solicitation letter.

The Holley Plan is a reorganization plan, proposed in good faith, under which Debtor would continue to operate its business in the ordinary course. The income from the operation of Debtor's business is the source of funds to implement the plan. The plan provides that, to the extent Debtor was in default of its obligations to Condor, Debtor shall cure and reinstate its obligations. Debtor was not in default of its obligations to Condor under the provisional workout agreement, as determined on November 6, 1998. (Doc. 186). The plan also provides for payment in full of all allowed unsecured claims, and that all legal, equitable, or contractual rights of holders of allowed interests of Debtor shall not be affected. The Holley Plan contains no impaired classes of claims or interests.

The Holley Plan further provides for payment of all allowed administrative expenses in full in cash not later than the effective date of the plan, unless otherwise agreed by the holders of such claims. However, an administrative expense incurred in the ordinary course of business by Debtor may be paid by Debtor in the ordinary course of its business.

The proponents of the Holley Plan have disclosed the identity and affiliations of Philip C. Grace and H & H Realty, Inc. ("H & H"). Grace would serve as the general partner of Debtor. The appointment of Grace is consistent with the interests of creditors and equity security holders and with public policy. Grace would

not be compensated for his services in acting as general partner. H & H shall continue to manage Debtor's apartment complex on a day-to-day basis, and initially would continue to be paid at the same rates approved by the court in this case.

The Holley Plan is feasible. Debtor has the financial ability to make the payments required under the Holley Plan. Debtor has made all required payments to Condor since early 1995, has made all payments required during the Chapter 11, and has the ability to comply with the provisions of the plan of reorganization.

Debtor stipulated the Condor Plan was confirmable. The Condor Plan is a liquidating plan, proposed in good faith, which provides for Debtor to deed the property to Condor, whereupon Condor would provide $60,000.00 for distribution to: (1) Class 1—holders of allowed administrative claims; (2) Class 3—holders of allowed unsecured claims of $1,500.00 or less; and (3) Class 4—holders of allowed unsecured claims of $1,501.00 or more. Debtor would cease to exist, and any interest the limited partners have in Debtor would be extinguished. There would be no distribution to holders of unsecured claims if an administrative claim, including professional fees, were at least $60,000.00. The Condor Plan also provides that all executory contracts, other than contracts with tenants, would be rejected.

The Condor Plan would pay administrative claims, Class 1, in full, on the later of the effective date of the plan or the date such claim becomes an allowed claim. Class 2, the secured claim of Condor, would have its claim deemed allowed in the amount of the proof of claim filed by Condor, and Condor, its officers, directors, agents, asset managers, and the respective employees, would be released from any and all claims by Debtor, its agents, or any insider of Debtor. The convenience class of unsecured claims of $1,500.00 or less, Class 3, would be paid in full, with 8% interest from the petition date to the effective date. Class 4, all allowed unsecured claims, would be paid pro rata from the distribution fund after the payment of all Class 1 administrative claims and Class 3 convenience claims. Class 5, all allowed interests, including the claims of Grace Properties # 25 Ltd. and Grace Properties, Inc., would receive nothing under the plan, and their interest in Debtor shall be cancelled and Debtor dissolved as of the effective date of the plan.

Classes 2, 4, and 5 are impaired. This treatment is not less than the amount that Condor would receive or retain if Debtor were liquidated in a Chapter 7 bankruptcy case. At least one impaired class has accepted the plan.

The Condor Plan is feasible. The Condor Plan is likely to succeed. The plan requires Debtor to deed to Condor the property, in exchange for $60,000.00 for distribution to creditors. Condor has the necessary funds available for distribution.

All payments made by Debtor and Condor in connection with the case and the Holley Plan and the Condor Plan have been approved by the court, or are subject to court approval. Both plans provide for the timely payment of fees payable under 28 U.S.C. § 1930.

A total of seventeen (17) ballots were cast by holders of unsecured claims. Condor cast thirteen (13) ballots, based upon its claim and claims it purchased, in favor of and preferring the Condor Plan. Insiders of Debtor cast two (2) ballots, preferring the Holley Plan. The remaining two (2) ballots were cast by creditors unrelated to Condor or Debtor, preferring the Holley Plan over the Condor Plan.

Both the Holley Plan and the Condor Plan are confirmable. The Holley Plan of reorganization is preferable to Condor's plan to liquidate, is in the best interest of the creditors, and should be confirmed.

### CONCLUSIONS OF LAW

This case involves two competing plans of reorganization. The Holley Plan

was filed by Debtor, and the Condor Plan was filed by Condor One, Inc., the largest creditor in the case. Section 1129(c) provides that only one plan can be confirmed, even if there are multiple plans that are confirmable. 11 U.S.C. § 1129(c). The first step at a confirmation hearing on competing plans is to determine whether one or more of the plans are confirmable. *See In re Burton Securities*, 148 B.R. 478, 480 (Bankr.S.D.Tex.1992). The following factors should be considered in determining which competing plan to confirm, if more than one plan is confirmable: (1) the type of plan; (2) the treatment of creditors and equity security holders; (3) the feasibility of the plan; and (4) the preferences of creditors and equity security holders.

*Ability to be Confirmed.* Section 1129(a) of the United States Bankruptcy Code provides the requirements for confirmation of a plan. Sections 1129(a)(1) and (2) require the plan and the proponent of the plan to comply with all applicable provisions of the Bankruptcy Code. Both the Holley Plan and the Condor Plan comply.

 Section 1129(a)(3) requires that the plan be proposed in good faith. "Good faith" merely requires that there be a reasonable likelihood that the plan will achieve a result consistent with the standards described under the Code. *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315 (8th Cir.1987). Good faith is determined in light of the totality of circumstances and the purpose of the Bankruptcy Code to provide debtors a fresh start. *B.M. Brite v. Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985). Both plans were proposed in good faith.

Section 1129(a)(4) requires that payments made, or to be made, by the plan proponent or the debtor for services or costs and expenses in connection with the case, or in connection with the plan and incident to the case, must be approved by the court as reasonable. All payments made by Debtor and Condor in connection with the case and the plans have been approved by the court, or are subject to such approval. This requirement is satisfied.

The plan proponent must, pursuant to § 1129(a)(5), disclose the identity and affiliations of any individual proposed to serve as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5)(ii). The plan proponent must also disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. 11 U.S.C. § 1129(a)(5)(B).

The Holley Plan proposes for Philip C. Grace to serve as the initial general partner of Debtor. The Holley Plan does not propose to compensate Grace for his services in acting as general partner. H & H Realty, Inc. shall continue to manage Debtor's apartment complex on a day-to-day basis. H & H initially would continue to be paid at the same rates approved by the court in this case. The Holley Plan satisfies the requirements of § 1129(a)(5).

The Condor Plan proposes for all property of Debtor to be transferred to Condor. Debtor would cease to exist, and all management responsibility would transfer to Condor. No individual would serve as a director, officer, or voting trustee of the debtor, or an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan. The Condor Plan also satisfies the requirements of § 1129(a)(5).

Section 1129(a)(6) in inapplicable in this case, as Debtor's rates are not subject to approval of any governmental regulatory commission.

Section 1129(a)(7) delineates the requirements for impaired classes of claims and interests. Each holder of a claim or interest of an impaired class must have

accepted the plan. In the alternative, the holder of such a claim or interest must receive or retain, on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated in a Chapter 7 bankruptcy case.

The Holley Plan provides no impaired classes of claims or interests. The requirements of § 1129(a)(7) are satisfied since all unimpaired classes are conclusively presumed to have accepted the plan. 11 U.S.C. § 1126(f).

The Condor Plan has three impaired classes. Classes 2, 4, and 5 are impaired under the Condor Plan. Class 2, the secured claim of Condor, shall have its claim deemed allowed in the amount of the proof of claim filed by Condor, and Condor, its officers, directors, agents, asset managers, and the respective employees, shall be released from any and all claims by Debtor, its agents, or any insider of Debtor. This treatment is not less than the amount that Condor would receive or retain if Holley Garden were liquidated in a Chapter 7 bankruptcy case.

Class 4, all allowed unsecured claims, shall be paid pro rata, in cash, from the distribution fund after the payment of all Class 1 administrative claims and Class 3 convenience claims. Class 5, all allowed interests, including the claims of Grace Properties # 25 Ltd. and Grace Properties, Inc., shall receive nothing under the plan, and their interest in Debtor shall be cancelled and Debtor dissolved as of the effective date of the plan. This treatment is not less than the amount that Condor would receive or retain if Debtor were liquidated in a Chapter 7 bankruptcy case. The requirements of § 1129(a)(7) are satisfied.

Section 1129(a)(8) requires that, with respect to each class of claims or interests, such class has accepted the plan, or is not impaired under the plan. A class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan. 11 U.S.C. § 1126(f). Solicitation of acceptances is not required from the holders of claims or interests of unimpaired classes. 11 U.S.C. § 1126(f).

All claims or interests are unimpaired under the Holley Plan, and are deemed to have accepted the plan. The unimpaired classes under the Condor Plan also are conclusively presumed to have accepted the plan. The other classes in the Condor Plan have accepted the plan. Section 1129(a)(8) is satisfied under both the Holley Plan and the Condor Plan.

Section 1129(a)(9) does not apply in this case, as there are no priority claims.

Section 1129(a)(10) provides that if a class of claims is impaired under the plan, at least one impaired class must accept the plan for it to be confirmed. No impaired classes exist in the Holley Plan. The Condor Plan contains impaired classes, and at least one such class has accepted the plan. The requirements of § 1129(a)(10) are satisfied.

Section 1129(a)(11) requires the court to determine whether the proposed plan is feasible. Satisfaction of the feasibility requirement of confirmation requires a finding of financial stability. *In the Matter of Huckabee Auto. Co.*, 33 B.R. 141, 145 n. 2 (Bankr.M.D.Ga.1981). The plan proponent need not show a guaranty of success, but merely a reasonable expectation of success. *Id.* The analysis requires the court to determine whether the things that are to be done after confirmation can be done as a practical matter based upon the facts of the case. *In re Clarkson*, 767 F.2d 417, 420 (8th Cir.1985).

Debtor has the financial ability to make the payments required under the Holley Plan. Confirmation of the Holley Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtor. Debtor has sufficient cash to pay all of the unsecured claims, with interest. Debtor has made all required payments to

Condor since early 1995, has made all payments required during the Chapter 11 case, and has the ability to make the remaining payments to comply with the provisions of the plan of reorganization. The Holley Plan satisfies the requirements of § 1129(a)(11).

The Condor Plan also is feasible. The Condor Plan is likely to succeed. The plan requires Condor to provide $60,000.00 for distribution to creditors, and the required funds are available to Condor. The Condor Plan satisfies the requirements of § 1129(a)(11).

Section 1129(a)(12) requires payment of fees payable under 28 U.S.C. § 1930 to be paid not later than the effective date of the plan. Both plans provide for the payment of such fees in a timely manner.

Section 1129(a)(13) is not applicable as Debtor does not provide retiree benefits.

The Holley Plan and the Condor Plan satisfy the requirements of § 1129(a). Both plans are confirmable.

■ *The Type of Plan.* A reorganization plan is usually preferable to a liquidation plan. *In re Oaks Partners, Ltd.,* 141 B.R. 453, 465 (Bankr.N.D.Ga.1992). The policy of Chapter 11 is to successfully rehabilitate the debtor. *National Labor Relations Bd. v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984). The fundamental principles of Chapter 11 include the desire to maximize the value of the estate for the benefit of all creditors, to promote equal distribution among creditors, and to avoid piecemeal, preferential dismemberment of a debtor's assets. *Lykes Bros. Steamship Co., Inc. v. Hanseatic Marine Service (In re Lykes Bros. Steamship Co., Inc.),* 207

B.R. 282, 284 (Bankr.M.D.Fla.1997). Another purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. *Bildisco,* 465 U.S. at 528, 104 S.Ct. at 1197 (citing H.R.Rep. No. 95–595, p. 220 (1977)). A viable reorganization plan typically provides a greater payment to creditors while preserving the economic life of the entity. *Kaiser Aerospace and Electronics Corp. v. Teledyne Industries, Inc.,* 229 B.R. 860, 868–69 (S.D.Fla.1999).

■ The plan proposed by Debtor is a reorganization, under which Debtor would continue to operate its business in the ordinary course, as opposed to Condor's liquidating plan. Debtor's plan of reorganization is preferable to Condor's plan to liquidate.

■ *The Treatment of Creditors and Equity Security Holders.* The court should confirm the plan that provides better treatment for the creditors and equity security holders. *In re River Village Associates,* 181 B.R. 795, 807 (E.D.Pa.1995). The unsecured creditors and equity security holders would receive better treatment under the Holley Plan. The Holley Plan provides that, to the extent Debtor was in default of its obligations to Condor, Debtor shall cure and reinstate its obligations pursuant to 11 U.S.C. § 1124(2).[1] The Holley Plan also provides for payment in full of all allowed unsecured claims, and that all legal, equitable, or contractual rights of holders of allowed interests of Debtor shall not be affected.

The Condor Plan does not provide favorable treatment for creditors and equity security holders, as the plan would require

---

1. Condor contends Debtor may not reinstate the Provisional Workout Agreement as a basis for proposing a plan of reorganization, and that if Debtor wishes to cure and reinstate the loan documents it must cure and reinstate the original Department of Housing and Urban Development Mortgage. However, the cases to which Condor cites all involve situations in which there was a default under the Provisional Workout Agreement. *See United States v. Victory Highway Village,* 662 F.2d 488 (8th Cir.1981); *United States v. Wennick,* 645 F.Supp. 103 (D.Del.1986); and *United States v. 1300 Lafayette East,* 455 F.Supp. 988 (E.D.Mich.1978). The cases are not applicable to the instant case, as the Court has already ruled there was no default.

Debtor to relinquish its deed to the property in exchange for a distribution to creditors of $60,000.00, with the potential for no distribution to unsecured claims and would extinguish any interest of the limited partners. The Condor Plan also would reject all executory contracts. This may create another class of creditors that may be potentially adversely affected.

■ *The Feasibility of the Plan.* The court should give preference to the plan that is more feasible than the other proposed plans. *River Village,* 181 B.R. at 807. The Condor Plan is more feasible than the Holley Plan because they have the ability to implement the plan immediately. However, Debtor has demonstrated that its plan also is feasible. Debtor was always current on its obligations to Condor, has made all payments required during the Chapter 11 case, and has the ability to make all future plan payments.

■ *The Preferences of Creditors and Equity Security Holders.* The court must consider the preferences of creditors and equity security holders, but does not have to obey those preferences. *River Village,* 181 B.R. at 807. The votes of unrelated creditors are an important consideration, despite the overwhelming votes of related creditors in favor of their own plan. *Id.*

The preferences of creditors and equity security holders have been considered. The ballots submitted to creditors and equity security holders contained a place to indicate their preference for the plan filed by either Debtor or Condor.

Although a majority of the creditors preferred the Condor Plan, the Court is not bound by their preferences. The creditors who preferred the Condor Plan were related to Condor. The unrelated creditors preferred the Holley Plan and the Court deems this significant. Furthermore, Condor was required to submit its solicitation letter for review by Debtor's counsel. Condor did not follow the procedure and

the unauthorized solicitation letter was distributed.

## CONCLUSION

■ The primary responsibility of the bankruptcy court in a Chapter 11 proceeding is to ensure the confirmation of a reorganization plan which rehabilitates the debtor, while providing creditors the maximum return on their claims against the debtor's estate. *Kaiser,* 229 B.R. at 868–69 (S.D.Fla.). The Bankruptcy Court must focus on the ultimate goal of Chapter 11 when considering these equities. *Bildisco,* 465 U.S. at 527, 104 S.Ct. at 1197. The Bankruptcy Code does not authorize free-wheeling consideration of every conceivable equity, but rather only how the equities relate to the success of the reorganization. *Id.* The Bankruptcy Court's inquiry is of necessity speculative and it must have great latitude to consider any type of evidence relevant to this issue. *Id.*

The aforementioned elements have been considered. Based upon a balancing of those factors, and the totality of the circumstances, Debtor's plan is due to be confirmed. Debtor's plan of reorganization is preferable to Condor's plan to liquidate. Debtor's plan will maximize payments to creditors, while rehabilitating Debtor, rather than extinguishing Debtor's existence. The unsecured creditors and equity security holders would receive better treatment under the Holley Plan, as the Holley Plan provides for payment in full of all allowed unsecured claims, with all legal, equitable, or contractual rights of holders of allowed interests unaffected.

The Condor Plan is more feasible than the Holley Plan, but Debtor's plan is nonetheless feasible. Debtor has demonstrated an ability to make all payments required under the reorganization plan, both in the past and in the future. The Court has an obligation to consider, but is not bound by the preference of the creditors in favor of the Condor Plan. Those creditors voting in favor of the Condor Plan all were related

to Condor. However, all of the unrelated creditors preferred the Holley Plan.

The objection filed by Condor should be overruled and the Holley Plan should be confirmed. The Condor Plan will not be confirmed and to that extent the objection filed by Debtor will be sustained.

### ORDER CONFIRMING DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

This matter came on Confirmation of Debtor's, Holley Garden Apartments, Ltd., Third Amended Plan of Reorganization, dated August 19, 1998; the Objection by Condor One, Inc. to Confirmation of Debtor's Third Amended Plan of Reorganization; the Confirmation of Condor One, Inc.'s Plan of Reorganization; and the Objection by Debtor, Holley Garden Apartments, Ltd., to Confirmation of Condor One, Inc.'s Plan of Reorganization.

The plan was transmitted to creditors and interest holders. After hearing on proper notice, upon the confirmation affidavit presented at the hearing, and for the reasons stated orally and recorded in open court, the Court finds and determines that the requirements of confirmation as set forth in Bankruptcy Code § 1129(a) have been satisfied. Pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is hereby

**ORDERED, ADJUDGED AND DE-CREED** as follows:

1. The Objection by Debtor, Holley Garden Apartments, Ltd., to Confirmation of Condor One, Inc.'s Plan of Reorganization is **SUSTAINED.**

2. Confirmation of Condor One, Inc.'s Plan of Reorganization is **DENIED.**

3. The Objection by Condor One, Inc. to Confirmation of Debtor's Third Amended Plan of Reorganization is **OVERRULED.**

4. Debtor's, Holley Garden Apartments, Ltd., Third Amended Plan of Reorganization is **CONFIRMED,** and Debtor is authorized to execute all agreements and undertake the actions contemplated thereby. A copy of the plan is attached.

5. Debtor shall file all objections to claims within thirty (30) days of the date of this Order.

6. In accordance with § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of securities pursuant to this Plan, or the transfer of, or creation of any lien on, any property of Debtor pursuant to this plan or pursuant to an Order of the Court, shall not be taxed under any law imposing a stamp tax, transfer tax, recordation tax, or similar tax.

7. Debtor shall pay all fees owing to the Office of the United States Trustee within ten days of entry of this Order.

8. Debtor shall file a certificate of substantial consummation and a motion for final decree within thirty (30) days after the later of:

(a) the Effective Date of the Plan; or

(b) disposition of all objections to claims, adversary proceedings and other contested matters.

9. In the event Debtor fails to follow the provisions of Local Rule 3022–1, Debtor shall file a report within ninety (90) days from the date of this Order of Confirmation, setting forth the progress made in consummating the Plan. The report shall include:

(a) a statement of distribution by class, name of creditor, date of distribution, and amount paid;

(b) a statement of transfer of property; and

(c) a statement of affirmation that Debtor has substantially complied with the provisions of the confirmed Plan.

10. The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan of Reorganization and pursuant to the Order of Confirmation, specifically including but not limited to, the jurisdiction to determine all objections that have heretofore

been or may be filed to claims of creditors herein; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of Debtor, including any questions relating to any sums of money, services, or property due to Debtor; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.