**In re CALIFORNIA HANCOCK, INC., a California Corporation, Debtor.**

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellee,**

v.

**CALIFORNIA HANCOCK, INC., a California Corporation, Appellant.**

Ref. No. M7–00595–LF.
Bankruptcy No. LA 86–07904 LF.
BAP NO. CC 87–1499 MoJV.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 21, 1988.

Decided June 21, 1988.

Charles W. West, Gen. Counsel, Tatco Investments, Inc., Los Angeles, Cal., for appellant.

Bennett L. Silverman, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellee.

Before MOOREMAN, JONES and VOLINN, Bankruptcy Judges.

MOOREMAN, Bankruptcy Judge:

This appeal arises out of the bankruptcy court's order granting the appellee's motion for relief from the automatic stay, where the debtor had filed a Plan and Disclosure Statement just prior to the hearing.

### FACTS

On February 25, 1977, the debtor corporation purchased from the appellee a 106 unit apartment complex which is located in Texas and the only asset in the estate. The debtor issued a non-recourse promissory note payable to the appellee which was secured by a first deed of trust and an assignment of rents. The debtor defaulted on the loan in November, 1984. A foreclosure sale was scheduled for May 6, 1986, but the debtor filed its Chapter 11 petition the day before the foreclosure. On January 29, 1987, appellee filed a motion for relief from the automatic stay and on February 13, 1987, the debtor timely filed an opposition to the motion.

Prior to the hearing (February 18, 1987), the debtor filed its disclosure statement and a Plan of Reorganization listing the appellee as a Class D creditor with an allowed secured claim of $400,000.[1] Additionally, the plan provided that Mr. Sandoval would purchase the property subject to the "allowed secured claim" of appellee and that Sandoval would execute a *"Participation Note"* wherein the debtor and Sandoval would share in any future profits from a subsequent resale of the property.[2] The debtor admits that it has no equity in the subject property.

The bankruptcy court lifted the automatic stay, concluding that the proposed plan was not confirmable because the proposed transfer was not a *bona fide* sale to a third party, but rather a joint venture between the debtor and Sandoval. Additionally, the court pointed out that even if the transfer was characterized as a sale, the plan was not confirmable because under 11 U.S.C. § 1129 the appellee as the secured creditor was entitled to *all* the consideration from the transfer of the property which included any interest in "future profits." Finally, the bankruptcy court concluded that appellee would be entitled to a "credit bid" under 11 U.S.C. § 363(k) to the full amount of its allowed claim at any sale of the collateral. The debtor filed a timely notice of appeal.

### DISCUSSION

#### Mootness

Initially, the appellee argues that this appeal is moot because the property has

---

**1.** The unpaid balance of the loan is approximately $1,200,000, including $1,021,448 in unpaid principal and $191,500 in accrued interest to March, 1987.

**2.** The record indicates that the debtor and Sandoval had previously entered into a "Management Agreement" in which Sandoval was to manage the subject property.

been sold in a foreclosure sale and the debtor failed to obtain a stay pending appeal. Although the appellee was the creditor as well as the purchasing party at the foreclosure sale, the Ninth Circuit has recently stated that under such circumstances there is no exception to "bankruptcy's mootness rule" unless 1—the appellant has obtained a stay pending appeal, or 2—the foreclosure sale is subject to statutory rights of redemption. *In re Onouli–Kona Land Co.*, No. 87–1575, slip op. at 4428–29 (9th Cir. April 14, 1988).

The appellee argues that under Texas law, the debtor has no redemption rights and cites as authority for this argument *Thornton v. Goodman*, 216 S.W. 147, 148 (Tex.1919). The debtor, on the other hand, fails to address the issue of redemption rights under Texas law. Thus, it appears that the instant case is moot under the doctrine set forth in *In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1172–73 (9th Cir. 1988). However, assuming arguendo that there is a right of redemption under Texas law, this Panel will address the merits of this appeal.

### *The Plan of Reorganization*
### I. Joint Venture vs. Sale

The essence of this appeal is whether the proposed plan of reorganization was confirmable. Initially the bankruptcy court determined that the proposed plan should not be confirmed because it was merely a "joint venture" between the debtor and Mr. Sandoval. The debtor argues that it had entered into an "Agreement of Purchase and Sale" with Mr. Sandoval which specifically set forth the terms of the contract as a "purchase and sale" of the subject property. Despite the debtor's characterization of the transaction, however, the very terms of the agreement support the bankruptcy court's ruling. Besides providing for the "purchase" of the property subject to the appellee's allowed secured claim, the agreement between Sandoval and the debtor provided that the debtor would also be "entitled to partic-

ipate in 90% of the profits of a future resale of the subject property up to the first $200,000" and that Sandoval and the debtor would "then split any profits over $200,000 evenly." Additionally, Sandoval had the option to "purchase the stock of [the debtor] in exchange for a note and deed of trust secured by the Subject Property." E.R. at 181.

Under these circumstances, the record supports the bankruptcy court's determination that the suggested transaction was not an outright sale of the subject property. Pursuant to the bankruptcy court's determination that the debtor's agreement with Sandoval was not a "sale," the appellee would then be entitled to *recourse status* pursuant to 1111(b)(1)(A), and been allowed an unsecured claim of over $800,000. *See* ft. nt. 1/ *supra*. In this position, the appellee would have been able to cause the unsecured class of claims to dissent under the plan. *See* 11 U.S.C. § 1126(c).[3] Further, the plan would have been unconfirmable because the appellee would have received nothing on its $800,-000 unsecured claim, yet the plan still allowed the debtor to retain an interest in the future profits from the sale of the property. *See* 11 U.S.C. § 1129(b)(2)(B)(ii).

Even assuming that the debtor's plan of reorganization provided for the "sale" of the subject property, this Panel affirms the bankruptcy court's determination that the plan could not be confirmed on the basis that the terms of the plan did not allow the appellee the right to credit bid under 11 U.S.C. § 363(k).

### II. Allowed Claim and Section 363(k)

The essence of the debtor's argument is that the plan provided for the "sale" of the property and that the appellee's "allowed" claim under the plan should be $400,000 (which equals the lowest appraisal amount submitted by the appellee in the relief from stay proceeding). It is recognized, however, that:

---

**3.** Class E included the unsecured claims and totaled approximately $10,000. With recourse status, the appellee's allowed unsecured claim would have been over $800,000.

[a] debtor may not argue that because the creditor has undervalued the security in a relief from stay proceeding, the creditor can be compelled to subordinate its claim to inferior obligations of the debtor. 11 U.S.C. § 506(a). *In re Realty Investments, Ltd. V,* 72 B.R. 143, 146 (Bankr.C.D.Cal.1987) (citations omitted). The "allowed" claim for purposes of the plan may be quite different than an appraisal submitted in a lift of stay proceeding. *Id.*

The issue presented to this Panel arises out of the relationship between § 1111(b) and § 363(k). Generally, § 1111(b) allows for a nonrecourse claim to be treated the same as a recourse claim, by allowing the undersecured amount to participate in any distributions to unsecured creditors. By so doing, a substantially undersecured creditor may cause the unsecured class of claims to be a dissenting class under the plan, thereby preventing confirmation, unless § 1129(b)(2)(B)'s cram down requirements are satisfied.[4] However, § 1111(b)(1)(A)(ii) provides an exception to the above rule when the property is being sold *pursuant to a plan of reorganization.*

Under this exception, the debtor argues that the appellee is not entitled to make the § 1111(b)(2) election and is, therefore, unable to assert an unsecured claim. Accordingly, the debtor argues that the appellee could not have prevented the confirmation of the plan. The appellee, on the other hand, argues that if the transaction is characterized as a *sale,* it will unfairly lose its right to treatment as a recourse lender. In order to avoid the resulting unfairness, the appellee argues that it should have the opportunity to credit bid pursuant to

§ 363(k) as if the transaction were equivalent to a sale under § 363.

Section 363(k) allows a lienholder to bid up to the entire amount of the lien when a sale of property out of the ordinary course of business is proposed. By being allowed to credit bid under § 363(k), the appellee would be able to protect the amount of its lien in essentially the same manner as allowed under the provisions of § 1111. The debtor, however, argues that the language of § 363(k) does not support the bankruptcy court's conclusion that the appellee is entitled to credit bid when the property is being *sold through a plan of reorganization.* Section 363(k) reads:

> (k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). Subsection (b) provides for the sale of estate property, other than in the ordinary course of business, after a notice and hearing.

The appellee argues that its right to credit bid under § 363(k) is set forth in § 1129(b)(2)(A)(ii), which requires that with respect to a class of secured claims, the plan must provide:

> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; ...

>> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such claim or interest any property.

---

4. In this case, the cram down provisions of § 1129(b)(2)(B) would not be satisfied under the debtor's proposed plan if the appellee is allowed its unsecured claim, because the equity interest holders retained certain benefits under the plan, while the appellee's unsecured claim would receive nothing. In order to satisfy the cram down provisions, § 1129(b)(2)(B) provides:

> (B) With respect to a class of unsecured claims—

11 U.S.C. § 1129(b)(2)(A)(ii). The above subsection, however, is only one of three methods available as a cram-down provision under § 1129(b) with respect to secured creditors. Although the inclusion of § 363(k) may evidence congressional intent to allow secured creditors the right to credit bid when a plan of reorganization provides for the sale of the property, it does not offer a dispositive answer to the issue of the application of § 363(k) *if the attempted cram-down is pursuant to § 1129(b)(2)(A)(i) or (iii).* The debtor argues that the proposed plan satisfies the requirements of § 1129(b)(A)*(i).*

The language of § 363(k) is unclear as to whether the right to credit bid is applicable when the property is being sold pursuant to a reorganization plan. However, in the recent case of *In re Realty Investments, Ltd. V,* 72 B.R. 143, 146 (Bankr.C.D.Cal. 1987), the bankruptcy court determined that although the language of § 363(k) was unclear, the legislative history supports the conclusion that:

> the rights of section 363(k) attach to the sale of property under the plan: *'Sale of property under section 363 or under the plan* is excluded from treatment under section 1111(b) because of the secured party's *right to bid* in the full amount of his allowed claim at any sale of collateral *under section 363(k)* of the House amendment.' 124 Cong.Rec. H 11104 (Daily Ed. Sept. 28, 1978); 124 Cong.Rec. S 17420 (Daily Ed. Oct. 6, 1978).

*Id.,* (emphasis added); *accord. In re Woodridge North Apts., Ltd.,* 71 B.R. 189, 191 (Bankr.N.D.Cal.1987).

Additionally, in *In re Woodridge North Apts.,* the debtor sought confirmation of a plan under the cram down provisions of § 1129(b)(2)(A)(i). 71 B.R. at 190. Besides citing the legislative history language (supra), the bankruptcy court adopted the language from *Collier on Bankruptcy* which concludes that "the *sale exception* to section 1111(b)(1)(A) applies only where the lienholder is allowed to *credit bid." In re Woodridge North Apts.,* 71 B.R. at 192 (emphasis added).

> Theoretically, if the secured creditor's collateral was sold pursuant to a private sale and the secured creditor did not have an opportunity to bid, the right of offset contained in section 363(k) would not apply and the secured creditor would lose its right to a deficiency claim by virtue of section 1111(b)(1)(A)(ii). *It is, however, the clear intent of the draftsmen of the Code to protect the non-recourse secured creditor by permitting such creditor to have recourse against the debtor, if the creditor is not permitted to bid in the amount of such creditor's debt in connection with a sale of the creditor's collateral.* For this reason, property encumbered by a lien in favor of a non-recourse secured creditor should be sold at private sale or, if the property is not sold at auction, the secured creditor should be allowed to match any offer made by a prospective purchaser at a private sale.

5 Collier on Bankruptcy, ¶ 1111.02 at 1111–23—24 (15th ed. 1987) (emphasis added), as cited in *Woodridge North Apts.,* 71 B.R. at 191. One bankruptcy court, in addressing the issue of the sale exception to the § 1111(b) election, has stated:

> the debtors, by the simple expedient of requiring the sale of all properties after confirmation, have deprived non-recourse creditors of the preferred status of recourse treatment which would otherwise be conferred upon them by § 1111(b)(1)(A). The loss of this conversion to recourse treatment, in turn, means that *the undersecured non-recourse creditor remains non-recourse, has no unsecured component to its claim and is limited to the secured claim to the extent of the § 506(a) value* assigned to the property by the court. ... This result is wholly lacking in fairness.

*In re Western Real Estate Fund, Inc.,* 75 B.R. 580, 589 (Bankr.W.D.Okl.1987) (emphasis added).

The above concerns are equally applicable to the appellee in the instant case. By holding that it would allow the appellee the right to credit bid as set forth in § 363(k), the bankruptcy court ruled that the appellee should be protected from the consequences of the loss of recourse treatment

as set forth in § 1111(b)(1)(A). The legislative history to § 363(k) clearly contemplates such protection.

Further, the debtor by the Plan seeks to reduce the amount of the debt from over $1.2 million down to $400,000 while retaining an interest in *future profits* arising from any subsequent sale of the property. This future interest is clearly a valuable right and, thus, the actual value of the subject property is unclear. Fairness requires that the appellee who holds a nonrecourse note, be allowed the full amount of *any value* in the property. Allowing the appellee to credit bid under § 363(k) would protect the appellee's interest in the full value of the property.

Given the Congressional intent to allow a nonrecourse creditor the right to credit bid in a proposed "sale" of the property pursuant to a plan of reorganization, the bankruptcy court properly determined that the debtor's proposed plan of reorganization could not be confirmed. Accordingly, the bankruptcy court's order lifting the stay is AFFIRMED.