**In re RIVER VILLAGE ASSOCIATES.**

Civ. A. Nos. 93–6389, 63–6600.
Bankruptcy No. 92–15503.

United States District Court,
E.D. Pennsylvania.

May 2, 1995.

Kenneth S. Goodkind, Fellheimer, Eichen & Braverman, Philadelphia, PA, for appellant/cross-appellee.

Stephen M. Lyons, III, Reed, Smith, Shaw & McClay, Philadelphia, PA, Irving Sulmeyer, Los Angeles, CA, for appellee-cross appellant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Appellant River Village Associates ("River Village"), Debtor, appeals an order of the Bankruptcy Court confirming the reorganization plan of Appellee General Electric Capital Corporation ("GECC"). Debtor asserts that the Bankruptcy Court erred in finding GECC's plan confirmable, and in choosing to confirm GECC's plan over Debtor's own reorganization plan. Debtor also appeals an order of the Bankruptcy Court finding that Debtor had not received an extension of its exclusive right to file a plan of reorganization, and an order approving GECC's second amended disclosure statement and confirmation plan voting procedures.

GECC has filed a cross-appeal of the confirmation order, contending that the Bankruptcy Court erred in finding the Debtor's plan confirmable. GECC also appeals an order of the Bankruptcy Court approving the Debtor's third amended disclosure statement, and an order finding that GECC did not have an interest in rents from the Debtor's real property.

The appeal of River Village was docketed as Civil Action No. 93–6389, and the cross-appeal of GECC was docketed as Civil Action No. 93–6600. The Court has jurisdiction to hear these appeals pursuant to 28 U.S.C. § 158.

For reasons set forth below, the order confirming the GECC reorganization plan and the additional orders of the Bankruptcy Court will be affirmed.

## I. Background

In light of the complexity of the orders under review, the background and procedural history of this case will be summarized as follows:

River Village is a limited partnership which, at the time it filed its petition under Chapter 11 of the Bankruptcy Code, owned a single principal asset: River Village Apartments, an apartment complex located in Claymont, Delaware ("the property"). It is undisputed that the property, at the time of filing, was in need of significant repairs.

The Debtor had purchased the property on or about May 28, 1988. As part of this purchase, the Debtor had assumed a $7,000,-000 Promissory Note to GECC, scheduled to mature on April 30, 1995 and secured by a mortgage to GECC that constituted a first lien on the property. The Debtor also entered into an assignment of rents and leases to GECC.

Debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code on September 11, 1992. On October 14, 1992, GECC filed a motion for relief from the automatic stay or, in the alternative, adequate protection under 11 U.S.C. § 362(d)(2). GECC, which is the principal creditor in this case, alleged that the Debtor had no equity in the property and no reorganization was possible. GECC also sought sequestration of rents which Debtor continued to collect, alleging that GECC had prior perfected liens or security interests in such rents. On December 10, 1992, the Bankruptcy Court, after notice and hearing, entered an order implementing the terms of an agreement between the Debtor and GECC which purported to settle GECC's motion to lift the automatic stay. The order provided, in relevant part, that:

> Pending the Debtor's filing of a Plan of Reorganization which contains the Commitment, GECC is granted relief from the

automatic stay only for the purposes of proceeding with such actions as GECC may take in accordance with the applicable loan documents and applicable state law, and under no circumstances shall GECC be permitted to transfer title to the Debtor's property unless the Debtor fails to [submit the required plan of reorganization and associated disclosure statement.]

Shortly thereafter, GECC sent a letter to tenants at River Village, directing the tenants to send rents to GECC instead of the Debtor. Following a motion by Debtor to hold GECC in contempt of the December 10th order and a hearing with the parties, the Bankruptcy Court ordered GECC and Debtor to send a joint letter stating that rents should be paid to Debtor and postponed a determination as to whether GECC should be permitted to take any further action until review of the Debtor's disclosure statement.

On December 21, 1992, Debtor filed a motion to extend the period in which it had the exclusive right under 11 U.S.C. § 1121 to file a plan of reorganization and disclosure statement. Following the Debtor's filing of its plan of reorganization and disclosure statement on January 8, 1993 and a motion by GECC to shorten the exclusivity period, the Bankruptcy Court entered an order on January 20, 1993, extending the Debtor's exclusivity period to April 19, 1993. As part of its order, the Bankruptcy Court provided that the Debtor may file requests for additional extensions prior to the expiration of the April 19, 1993 deadline, but "some will not be favored."

Over the next several months, the Debtor amended its plan of reorganization twice and on June 2, 1993, the Bankruptcy Court conducted a confirmation hearing on the Debtor's third plan. On June 29, 1993, the Bankruptcy Court issued an extensive order denying confirmation of the Debtor's third plan, but continuing its denial of relief to GECC from the automatic stay on the condition that the Debtor file a fourth amended plan by July 9, 1993. In denying confirmation, the Court wrote that "[g]iven the foregoing guidelines and guidance, we have little doubt that the Debtor can prepare a confirmable plan within the time constraints of the within Order."

The June 29, 1993 Order also resolved a central conflict between the Debtor and GECC over the valuation of the Property. Debtor had valued the property at $2,500,000, while GECC placed the value at $4,500,000. The Bankruptcy Court found that the property should be valued at $3,250,000, which would result in GECC having a secured claim in that amount and an unsecured claim for $3,496,564.

On July 9, 1993, Debtor filed its fourth amended plan of reorganization. In the meantime, however, GECC had prepared its own plan of reorganization and a disclosure statement and had filed these with the Bankruptcy Court on July 8, 1993. On July 18, 1993, Debtor filed a motion seeking clarification of the Bankruptcy Court's June 29, 1993 memorandum and order, asserting that the Bankruptcy Court had not given permission to GECC to file its plan and that the language of the June 29th order and the short period of time for filing of the Fourth Amended Plan gave the Debtor a continued exclusive right to file a reorganization plan. On July 21, 1993, the Bankruptcy Court summarily denied Debtor's motion and stated that "the Court did *not* mean to extend the Debtor's exclusivity in its Order of June 29, 1993."

While specific details of these plans and the disputes at issue on appeal are discussed *infra*, the Bankruptcy Court found that the plans had significant differences in their treatment of the property, GECC's claims, the claims of tenants for security deposits, and the equity interests of partners in the Debtor. Of particular significance was the different treatment of the property and GECC's claims: under the Debtor's plan, the Debtor retained ownership and made payments on GECC's secured claim under modified terms and paid 10% of all unsecured claims (including GECC's unsecured claim) over eight years; under GECC's plan, the Debtor's property would be sold to the highest bidder at a hearing immediately after confirmation of GECC's plan. Under GECC's plan, only GECC or its designated agent could "credit-bid" the aggregate

amount of GECC's claim, and only GECC's designated agent could bid subject to the GECC lien. GECC's secured claim would be satisfied in full upon payment to GECC of the net sales proceeds by a third party or purchase of the property by GECC or its designee.

After approving amended disclosure statements by the Debtor and GECC, the Bankruptcy Court held a confirmation hearing on both plans on September 23, 1993. Following extensive briefing by the parties on the merits of their own plans and the faults of the plan of the opposing party, the Bankruptcy Court issued an order on October 29, 1993 finding that both plans were confirmable but, since only one plan could be confirmed pursuant to 11 U.S.C. § 1129(c), the GECC plan would be confirmed because the Bankruptcy Court found that the GECC plan was preferable.

Following the confirmation of GECC's plan, the Debtor filed a notice of appeal, and GECC filed a notice of cross-appeal. The Debtor unsuccessfully sought emergency stays of the GECC Plan in the Bankruptcy Court and in this Court, and the property was sold in accordance with the GECC plan on December 8, 1993. The purchaser of the property was a GECC affiliate, which "credit-bid" the amount of the GECC loan pursuant to terms of the GECC plan. Debtor's bid for the property, which was made subject to the GECC lien in violation of the terms of the GECC plan, was rejected by the Bankruptcy Court.

On May 5, 1994, GECC filed a motion with this Court seeking to dismiss Debtor's appeal as moot in light of the substantial implementation of the GECC plan. Debtor opposed this motion, and GECC's motion was subsequently denied. The GECC affiliate subsequently sold the property to an unrelated third party on December 8, 1994, and GECC filed another motion seeking to dismiss this appeal as moot. This second motion is currently pending before the Court.

### A. The Debtor Plan

The Debtor's Plan provided for five classes of claims relevant for this appeal. Class Three consisted of the security deposits of River Village tenants, which were listed as priority claims pursuant to § 11 U.S.C. § 507(a)(6). The Debtor treated these claims as impaired, in that tenants would have the option of a 90% payment of their security deposit at the effective date of the plan, or a 100% payout over three years with interest. Over GECC's objections, the Bankruptcy Court determined that this impairment was not "artificial" in that such an option would encourage tenants to take immediate cash refunds of their deposits and renew their leases at River Village.

Under the Debtor plan, GECC's secured claim comprised Class 4 and was fixed at $3,250,000 in accordance with the Bankruptcy Court's June 29, 1993 Order. This claim would accrue interest at an annual rate of 9%, and the debtor would make interest payments only for several years, followed by principal and interest payments based on a twenty-five year amortization schedule. In the fifteenth year following the effective date of the plan, the Debtor would make a cash payment to pay off the entire remaining claim. GECC would retain a lien on the property until this secured claim was paid off.

Unsecured claims in Class 5, including the GECC's deficiency claim, would be paid 10% of their allowed value over an eight year period. In addition, the Debtor plan required equity interest holders in Classes 6 and 7 to contribute an additional $350,000 pursuant to the "new value exception" to the "absolute priority rule" derived from *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). The plan included various provisions for a reallocation of partnership interests in accordance with individual capital contributions.

### B. The GECC Plan

The GECC plan provided that there would be a sale of the Debtor's property at a hearing immediately following the Bankruptcy Court hearing at which GECC's plan was confirmed.

GECC placed tenant claims in Class 2. Under the GECC plan, tenants could either elect to leave their leases unaltered and pre-

serve their security deposits, or establish new leases after full refunds of the security deposits.

GECC classified its secured claim as Class 4, and provided that the proceeds of the property sale would be used to satisfy this claim in its entirety. The GECC Plan provided that only GECC or its designated agent could "credit-bid" the entire amount of GECC's secured and unsecured claims (approximately $6.5 million), and only GECC's agent could bid subject to GECC's lien. The GECC plan also placed a number of restrictions on the bidding process, including $50,-000 bidding increments and a requirement that a successful bidder other than GECC or its agent must put up $250,000 in cash as deposit. The plan made no provisions for advertising the sale.

The GECC plan placed all other unsecured claims in Class 5, and provided that these claims would be paid in full. Equity interest holders comprised Class 6, and any balance remaining after full distribution to Classes 1 through 5 would be paid to these interests. GECC guaranteed at least a $50,000 payment to these interests.

## II. Issues on Appeal

Debtor contends that the Bankruptcy Court erred in its July 21, 1993 Order by refusing to find that the Debtor's exclusive right to file a reorganization plan was extended by the June 29, 1993 Order. Debtor also asserts that the Bankruptcy Court erred in its August 4, 1993 Order approving GECC's disclosure statement, as well as GECC's plan voting procedures. Finally, Debtor contends that the Bankruptcy Court erred in its October 29, 1993 Order finding that GECC's Plan was confirmable and preferable to the Debtor's plan.

In its cross-appeal, GECC asserts that the Bankruptcy Court erred in its August 5, 1993 Order approving the Debtor's Third Amended Disclosure statement. GECC also asserts that the Bankruptcy Court erred in its October 29, 1993 Order, insofar as the Bankruptcy Court found that the Debtor's plan was confirmable. GECC also contends that it had an interest in the rents from the Debtor's real property, and the Bankruptcy Court

erred in denying GECC related relief from the automatic stay.

## III. Standard of Review

■ In reviewing the decisions of a bankruptcy court, a district court "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98 (3d Cir.1981); Bankruptcy R. 8013. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Upon a determination that the bankruptcy court's factual findings are not clearly erroneous, the district court must examine whether the factual findings are legally sufficient to support the bankruptcy court's conclusions of law. *See Universal Minerals,* 669 F.2d at 102.

Some decisions of a bankruptcy court are reviewed under an abuse of discretion standard. *See, e.g., In re Sharon Steel Corp.,* 871 F.2d 1217, 1225 (3d Cir.1989) (adopting abuse of discretion standard instead of plenary review for appointment of trustee under 11 U.S.C. § 1104(a)). An abuse of discretion occurs "when a court's ruling is founded on an error of law or clearly erroneous view of the facts or misapplication of law to the facts." *In re Gioioso,* 979 F.2d 956, 959 (3d Cir.1992).

## IV. Discussion

*A. Mootness*

■ In its present motion seeking to declare this appeal moot, GECC contends that this Court is unable to fashion effective relief in light of the substantial consummation of GECC's reorganization plan and the subsequent sale of the property by the GECC affiliate to an unrelated third party. Debtor asserts that if this Court were to find that the Bankruptcy Court erred in confirming GECC's reorganization plan, this Court could fashion effective relief by requiring GECC to

pay money damages if the sale could not be overturned. Debtor contends that such damages could be based on proceeds of the sale of the property by the GECC affiliate to the unrelated third party, and does not seek to undo any payments to creditors.

It is well-established that "[g]enerally speaking, an appeal must be dismissed as moot when an event occurs that prevents the appellate court from granting any effective relief, even if the dispute is decided in favor of the appellant." *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 150 n. 6 (3d Cir.1986). In *Abbotts Dairies,* the Third Circuit concluded that relief could still be fashioned for a party where the sale of a business pursuant to 11 U.S.C. § 363 was suspect, even if the sale could not be reversed on remand and substantial assets had been transferred. The Court noted that "a bankruptcy court is, after all, a court of equity," which "[i]n the exercise of its equitable jurisdiction ... has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate." *Abbotts Dairies, supra,* at 151 (quoting *Pepper v. Litton,* 308 U.S. 295, 307–08, 60 S.Ct. 238, 245–46 (1939)).

In this single-asset bankruptcy case, Debtor's appeal is based on the confirmation of the reorganization plan of its mortgagee and principle creditor, whose designated agent originally purchased the property at the post-confirmation sales hearing. The Court concludes that relief, if any, could be properly limited to the legal and equitable rights of the Debtor and GECC, and need not involve rescinding the sale of the property or transfer of payments to other creditors. Therefore, Debtor's appeal is not moot and GECC's motion to dismiss Debtor's appeal for reasons of mootness will be denied.

*B. Debtor's Appeal of the July 21, 1993 Order Finding No Extension of Debtor Exclusivity for Filing a Reorganization Plan*

Debtor contends that the Bankruptcy Court abused its discretion in the July 21, 1993 Order in which the Bankruptcy Court found that its June 29, 1993 Order had not extended the Debtor's exclusive right to file a plan of reorganization. In support of this argument, Debtor asserts that its exclusive right to file such a plan had been maintained under 11 U.S.C. § 1121(d) and Federal Rule of Bankruptcy Procedure 3016(a), and that the June 29, 1993 Order is only meaningful if Debtor retained this exclusivity.

11 U.S.C. § 1121(d) provides in pertinent part:

(a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, [a creditor, or others] may file a plan if and only if—

(1) a trustee has been appointed under this chapter;

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has not been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

(d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section.

F.R.B.P. 3016 provides in relevant part:

(a) TIME FOR FILING PLAN. A party in interest, other than the debtor, who is authorized to file a plan under § 1121(c) of the Code may not file a plan after entry of an order approving a disclosure statement unless confirmation of the plan relating to the disclosure statement has been denied or the court otherwise directs.

In the instant case, the Debtor filed its first plan of reorganization within the 120–day exclusive period provided by § 1121(b). Upon motion of the Debtor, the

Bankruptcy Court extended the exclusivity period to April 14, 1993. The Debtor filed no other request for an extension of exclusivity prior to the expiration of this period, and the June 29, 1993 Order denied confirmation of the Debtor's third amended plan of reorganization. Section § 1121(d) and F.R.B.P. 3016(a) clearly permit the filing of alternative reorganization plans by creditors following expiration of any exclusivity period and denial of a debtor's reorganization plan, which was exactly the posture of this case at the time of the filing of the GECC plan on July 8, 1993.

■ While Debtor asserts that it did request an additional extension of plan exclusivity at the June 2, 1993 hearing on its third reorganization plan, the Debtor asked only that "exclusivity be continued until [the Bankruptcy Court] makes a determination in respect to today's hearing." Transcript of June 2, 1993 Hearing, at 209. The June 29, 1993 Order denied confirmation to Debtor's third reorganization plan, and continued to provide protection to the Debtor by denying GECC relief from the automatic stay. Therefore, the Bankruptcy Court did not err in finding that its June 29th opinion did not create an additional extension of exclusivity for the Debtor to submit a fourth plan of reorganization, and its July 21, 1993 Order will be affirmed. *Cf. In re Perkins,* 71 B.R. 294, 297 (W.D.Tenn.1987) (noting that "it is only logical that once the exclusivity period and extensions thereto have expired, the debtor cannot resurrect his protected status in order to battle competing plans").

*C. Debtor's Appeal of the August 5, 1993 Order approving Plan Voting Procedures and GECC's Disclosure Statement*

Debtor also objects to the Bankruptcy Court's approval of the GECC voting plan, contending that Bankruptcy Court allowed GECC to "disenfranchise" the tenants by not soliciting their votes on the GECC plan. The GECC Plan provided a tenant with two options for treatment of the tenant's lease and security deposit: (1) continuation of the tenant's current lease, which would be assumed by the successful bidder for the property; (2) rejection of the tenant's current lease with a full cash refund of the current security deposit, and adoption of a new lease containing the same terms as the old lease but without a requirement of a security deposit. GECC asserted that because these options did not impair the tenants' claims under 11 § U.S.C. 1124, the tenants were deemed to have accepted GECC's plan without voting pursuant to 11 U.S.C. § 1126(f). In contrast to GECC's procedures, Debtor had been required to solicit tenant votes as its plan also rejected current tenant leases and provided for new leases, but offered tenants either delayed payment in full of the security deposits or a 90% cash refund of the deposit following the effective date of Debtor's plan.

■ Debtor contends that the rights of the tenants under GECC's plan were still changed and that the tenants should therefore have been entitled to vote on GECC's plan. Section 11 U.S.C. § 1124 provides that a claim is impaired unless the plan

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; ... or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to

(A) with respect to a claim, the allowed amount of such claim ...

11 U.S.C. § 1124(1), (3). 11 U.S.C. § 1126(f) provides that:

(f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

Because GECC's plan provides that a tenant may select either the assumption of the lease without alteration of its terms, including a complete refund of its security deposit pursuant to the terms of the original lease, or an immediate and complete refund of the security deposit, the Bankruptcy Court concluded correctly that the tenant class was unimpaired as a matter of law. Because the votes

of an unimpaired class need not be solicited pursuant to § 1126(f), the Bankruptcy Court did not err in approving GECC's plan voting procedures.

Although Debtor's other objections to the Bankruptcy Court's August 5, 1993 ruling reflect its concerns with GECC's plan of reorganization as well as its Disclosure statement, the standards governing disclosure statements require separate consideration.

■ The acceptance or rejection of a plan cannot be solicited without the approval by the Bankruptcy Court of a written disclosure statement. 11 U.S.C. § 1125(b). This statement must contain "adequate information," which means

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible proposed plan . . .

11 U.S.C. § 1125(a)(1). The Legislative notes to this statute provide

> Both the kind and form of information are left essentially to the judicial discretion of the court, guided by the specification in subparagraph (a)(1) that it be of a kind and in sufficient detail that a reasonable and typical investor can make an informed judgment about the plan. The information required will necessarily be governed by the circumstances of the case.

11 U.S.C. § 1125(a)(1), 1978 Notes; *see also In the Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1156–57 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); **5 Lawrence P. King, Collier on Bankruptcy** § 1125.03[1], 1125–22 (hereinafter **Collier**) (courts should "consider the needs of the claims or interests of the class as a whole and not the needs of the most

sophisticated or least sophisticated members of a particular class").

■ Under § 1125(a), the Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement. GECC's second amended disclosure statement clearly outlines the fact that the property would be sold immediately after confirmation, and that GECC or its agent would be a potential bidder. The disclosure statement also communicated the provisions for full payment of tenant security deposits and unsecured claims under the GECC plan, as well as GECC's guarantee of $50,000 to the equity interests. While Debtor alleges that the relative haste of the plan's sale may diminish the value of the property and that GECC should be required to address any such potential risk, this Court concludes that the Bankruptcy Court did not abuse its discretion in finding that GECC's disclosure statement met the requirements of 11 U.S.C. § 1125 in light of the details of the GECC plan, the sale information provided in the disclosure statement and the interests of the different classes in this bankruptcy proceeding.

*D. GECC Appeal of August 5, 1993 Approval of Debtor's Disclosure Statement*

■ In its cross-appeal, GECC raises numerous objections to the Bankruptcy Court's approval of the Debtor's Third Amended Disclosure Statement. Among GECC's objections are the allegation that the Debtor's disclosure statement did not provide adequate information because it failed to provide income and expense projections beyond a five-year period and does not provide sufficient detail on the treatment of creditors if the property was liquidated.

As discussed *supra*, the Bankruptcy Court is given substantial discretion in assessing the adequacy of a disclosure statement. In the instant case, upon review of the Debtor's disclosure statement and its description of the treatment of claims, as well as consideration of the interests and relative sophistication of the tenants and GECC, the Court concludes that the Bankruptcy Court did not abuse its discretion in finding that the Debt-

or's Third Amended Disclosure statement satisfied the requirements of § 1125.

*E. The Appeals of the October 29, 1993 Finding the GECC Plan Confirmable and Preferable to the Debtor Plan*

In reviewing both plans following a hearing on September 22, 1993, and an opportunity for additional briefing, the Bankruptcy Court determined in its October 29th Order that both the GECC plan and the Debtor plan were confirmable, but that the GECC plan was preferable and would be confirmed. In the appeal and cross-appeal, both Debtor and GECC object to the Bankruptcy Court's determination that the opposing party's plan was confirmable. In addition, Debtor objects to the Bankruptcy Court's confirmation of GECC's plan, based on its finding that the GECC plan was preferable. Because the Court finds that the Bankruptcy Court did not err in finding the GECC plan confirmable and in concluding that the GECC plan was preferable to the Debtor's plan, the October 29, 1993 confirmation order will be affirmed.

In confirming a reorganization plan, a Bankruptcy Court must ensure that the plan satisfies numerous requirements specified under 11 U.S.C. § 1129. In particular, a plan may only be confirmed if it satisfies the following relevant requirements of 1129(a):

(1) the plan complies with the applicable provisions of [Chapter 11].

(2) the proponent of the plan complies with the applicable provisions of [Chapter 11].

(3) the plan has been proposed in good faith and not by any means forbidden by law....

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

In addition, in the situation where a bankruptcy court is presented with two confirmable plans, § 1129(c) provides:

(c) Notwithstanding subsections (a) and (b) of this section ... the court may confirm only one plan ... If the require-ments of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

In its appeal, Debtor contends that the Bankruptcy Court erred in confirming the GECC Plan instead of the Debtor's plan. Specifically, Debtor asserts that the Bankruptcy Court erred in confirming a plan that proposed to liquidate Debtor's property instead of permitting a reorganization. Debtor also objects to the Bankruptcy Court's decision to permit GECC to "credit-bid" its aggregate claim in the post-confirmation sale of the property. Finally, Debtor asserts that the Bankruptcy Court failed to consider the expressed preferences of the creditors and equity interests in finding that the GECC plan was preferable to Debtor's plan, and erred in concluding that it had given Debtor sufficient opportunity to confirm a plan and that the GECC plan was more feasible.

■ Although Debtor contends that the Bankruptcy Court erred in confirming a liquidation plan instead of the reorganization plan proposed by the Debtor, the Bankruptcy Court correctly concluded that, as a matter of law, the Bankruptcy Code permits liquidation plans in Chapter 11 proceedings and such a plan does not violate the requirements of § 1129(a). *See* 11 U.S.C. § 1123(b)(4) (a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests"); *see also In the Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1352, *reh'g denied*, 889 F.2d 663 (5th Cir.1989) ("It is clear from [1123(b)(4) and other statutory provisions] that although Chapter 11 is titled 'Reorganization,' a plan may result in the liquidation of the debtor.").

■ Similarly, GECC was properly permitted to credit-bid the aggregate amount of its allowed claim under the terms of its plan. Courts and commentators have concluded that Congress did not intend to deprive creditors of the right to bid their full claim under a reorganization plan. *See, e.g., In re Cali-*

*fornia Hancock, Inc.*, 88 B.R. 226 (9th Cir. BAP 1988); **5 Collier**, *supra*, § 1111.02[3] at 1111–32.2 n. 22a ("The nonrecourse creditor becomes recourse unless the property is sold but such sale must be under circumstances that permit the nonrecourse creditor to bid in its debt for the property.").

■ Debtor's additional contention that permitting GECC to credit-bid the full amount of its claim allowed GECC to usurp value that Debtor had contributed to the property post-petition is without merit. In the instant case, the Bankruptcy Court held an extended hearing on June 2, 1993 to determine the value of the property. At this hearing, the Bankruptcy Court heard testimony regarding the property, including testimony related to post-petition improvements. The Bankruptcy Court subsequently issued an opinion setting the value of the property at $3,250,000, and this value was used in the Debtor's plan and disclosure statement, at the second confirmation hearing, and at the property sale. In light of the detailed testimony which the Bankruptcy Court heard regarding the history of the property, the Court concludes that the Bankruptcy Court did not erroneously value the property by failing to consider Debtor's evidence of post-petition improvements.

■ In light of these determinations, the Court also concludes that the Bankruptcy Court did not err in finding that the GECC plan providing for the sale of the property and full payment of creditors was confirmable. Under GECC's plan, GECC or its agent was properly permitted to credit-bid GECC's allowed claim of $6.5 million for property which the Bankruptcy Court had valued at $3.25 million. Debtor, its partners, and other creditors were on notice of the provisions of the sale, which took place more than a month after the confirmation of the GECC plan, and although the plan did not allow the Debtor or others to bid subject to the GECC lien, the plan allowed them to enter a bid in excess of GECC's credit-bid of $6.5 million. While Debtor objects to the timing of the sale, the absence of general advertising and the bidding restrictions under GECC's Plan, the Debtor's allegation that these provisions improperly prevented a maximization of interests in light of the Bankruptcy Court's previous valuation is without merit.

■ In its cross-appeal, GECC raises numerous objections to the confirmability of the Debtor's plan, including the continuing validity of the "new value exception" to the "absolute priority rule." This issue has divided many courts, and has not been resolved in this Circuit. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 203 n. 3, 108 S.Ct. 963, 967 n. 3, 99 L.Ed.2d 169 (1988) ("Our decision today should not be taken as any comment on the continuing validity of the *Los Angeles Lumber* exception—a question which has divided the lower courts since passage of the Code in 1978"); *In re Sovereign Group*, 142 B.R. 702, 706 n. 5 (E.D.Pa. 1992) (noting absence of controlling authority); **Collier**, *supra*, § 1129.03 at 1129–95 (citing cases). Although the Bankruptcy Court would have likely confirmed the Debtor's plan had Debtor been able to maintain its exclusive right to submit a plan of reorganization, the Bankruptcy Court chose to confirm GECC's plan because it was preferable to the Debtor's plan. In light of the Court's finding that the Bankruptcy Court correctly found the GECC plan preferable, as discussed below, the Court need not address the merits of GECC's objections to the confirmability of the Debtor's plan.

■ Having found both the GECC and Debtor plan confirmable, the Bankruptcy Court was required by § 1129(c) to consider the expressed preferences of the creditors and equity interests. The Bankruptcy Court found that under the GECC plan, all of the creditors, including the tenants, were unimpaired and were deemed to have accepted the GECC plan without voting pursuant to 11 U.S.C. § 1126(f), with the exception of GECC, which voted in favor of its own plan. The Bankruptcy Court also found that under the Debtor's plan, all of the tenants who chose to vote were in favor of the Debtor's plan, but that the GECC vote in the unsecured and secured creditor classes resulted in a rejection of the Debtor's plan by those creditor classes. Nearly all of the equity interests, who were impaired under both

plans, voted to accept the Debtor's plan and to reject GECC's plan.

In making its decision that the GECC plan was preferable, the Bankruptcy Court found that the GECC plan should be confirmed "mostly because of its superior treatment of all creditors and possibly even the Debtor's interest holders" in light of the $50,000 guaranteed payment to equity under GECC's plan. Although Debtor argues that the votes of the tenants, equity, and one unsecured creditor in favor of Debtor's plan demonstrated clear preference for its plan over that of GECC, the Bankruptcy Court found that the preferences of the creditors were "overwhelmingly in favor" of the GECC plan because the tenants and non-GECC creditors were deemed to have accepted the plan without voting and GECC had voted in favor of its own plan. While Debtor contends that the tenants and non-GECC creditors may have preferred that the Debtor continue to manage the property, and notes that their votes on the GECC plan were never solicited because they were not impaired under that plan, the Court finds that the Bankruptcy Court did not err as a matter of law in concluding that the unimpaired tenants and creditors would prefer a plan which leaves them financially whole. *Cf.* 11 U.S.C. § 1126(f) (stating that holders of non-impaired claims under a plan are "conclusively presumed" to have accepted that plan).

Under the language of § 1129(c), a bankruptcy court is only obligated to consider the preferences of the creditors and equity interests, not obey them. *See, e.g., In re Turner Engineering, Inc.,* 109 B.R. 956 (D.Montana 1989) (noting that a bankruptcy court is "of course free to make its own determination having taken into account such preferences"). In the instant case, the Bankruptcy Court also based its confirmation decision on a finding that GECC's plan of liquidating the property was far more feasible than the Debtor's plan, which required payments to GECC over fifteen years and was "premised on an end to the real estate recession, a prospect which is not in sight." Because the feasibility requirement of confirmation means that a plan will "not likely be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan," 11 U.S.C. § 1129(a)(11), the Bankruptcy Court did not err as a matter of law in concluding that the GECC liquidation plan was more feasible than the Debtor's plan.

Although the Bankruptcy Court acknowledged in its selection of the GECC plan that reorganization is preferable in many cases to liquidation, the Bankruptcy Court found that goals of reorganization, such as the preservation of jobs and asset value, were not present in this single-asset case, and that it had given the Debtor sufficient opportunity to present a confirmable plan. As discussed *supra,* a liquidation plan is not impermissible in Chapter 11, and the Debtor here was able to submit several confirmation plans, even though it failed to properly seek to preserve its right of plan exclusivity under § 1121. After review of the record and the findings of fact and law upon which the Bankruptcy Court determined that the GECC plan was preferable, and considering the record and findings under both a "clearly erroneous" standard and an abuse of discretion standard, the Court concludes that the Bankruptcy Court correctly found the GECC plan preferable in that its implementation would leave all creditors except GECC unimpaired and eliminate all of GECC's claims against the estate.

Therefore, the October 29, 1993 Order of the Bankruptcy Court will be affirmed.

## F. GECC's Interest in the Rents

GECC also appeals the Bankruptcy Court's rulings finding GECC did not have a lien on rents generated by the property and denying it appropriate relief from the automatic stay.

In its June 29th Order denying confirmation to the Debtor's third reorganization plan, the Bankruptcy Court found that while GECC had an assignment of rents, it did not have a valid lien that would prevent the Debtor from using the rents. The Bankruptcy Court reasoned that GECC had taken no action which would have created such a valid lien under Delaware law. The Bankruptcy Court also provided an additional basis for its decision, stating that even assuming GECC

had an interest in the rents, the Debtor may adequately protect GECC's interest by promptly preparing a confirmable plan. The Bankruptcy Court subsequently re-examined its finding under Delaware law in its October 29th confirmation order in light of *Commerce Bank v. Mountain View*, 5 F.3d 34 (3d Cir. 1993), an intervening decision construing assignment of rents under the Bankruptcy Code and Pennsylvania law, and affirmed its earlier decision. After confirming GECC's plan over Debtor's plan, the Bankruptcy Court then dismissed GECC's stay motion as moot.

At the time of the filing of Debtor's Chapter 11 petition, 11 U.S.C. § 552(b) provided:

> (b) ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case and to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

In applying this version of § 552(b) to an assignment of rents, courts have looked to state law to determine whether an existing assignment of rents has become a valid, perfected security interest such that a debtor-mortgagor should be enjoined from using post-petition rents. *See Commerce Bank, supra*, at 37. In its analysis of the perfection of GECC's security interest, the Bankruptcy Court concluded that Delaware law is undeveloped in this area and rejected GECC's claim under an "American common law rule" derived from *Teal v. Walker*, 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415 (1884), which required a mortgagee seeking to collect rents to take "effectual" steps towards possession of the property.

Despite GECC's contention that Delaware law is clear on the perfection of an assignment of rents, the Court finds that the Bankruptcy Court was correct in deciding that Delaware law is undeveloped in this area. In *In Re Baltic Associates*, 170 B.R. 568 (E.D.Pa.1994), Judge Hutton wrote that "[t]he resolution of [when a security interest in rents is perfected under Delaware law] is complicated by the fact that neither the Delaware courts, nor the Delaware legislature have addressed this question." Unlike the Bankruptcy Court below, however, Judge Hutton concluded that the Delaware Supreme Court would likely adopt the "modern rule" that an assignment of rents would be perfected at the same time a security interest in the underlying property was perfected. *See also* Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 214(a), 108 Stat. 4106, 4126; H.R.Rep. No. 103–835, 103rd Cong., 2d. sess. 48–49, *reprinted* in 1994 U.S.C.C.A.N. 3357–58 (amending § 552 so that "lenders may have valid security interests in postpetition rents for bankruptcy purposes notwithstanding their failure to have fully perfected their security interest under applicable state law").

 Although the Court finds Judge Hutton's analysis persuasive, both the applicable and newly amended versions of § 552(b) provide that even where a pre-petition security interest would extend to post-petition proceeds, the Bankruptcy Court, "after notice and hearing and based on the equities of the case," may order otherwise. *See, e.g., United Virginia Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986) (noting that "§ 552(b) gives the bankruptcy court considerable latitude in applying pre-petition security interests to post-petition proceeds" and that "Congress undertook in [§ 552(b)] to find an appropriate balance between the rights of secured creditors and the rehabilitative purposes of the Bankruptcy Code"). In the June 29th Order, the Bankruptcy Court found that, even assuming GECC had an valid interest in rents, GECC's interests were adequately protected as Debtor developed its reorganization plan. In light of the Bankruptcy Court's findings and the preceding hearings related to GECC's stay motions,

the Court concludes that the Bankruptcy Court did not abuse its discretion in denying GECC relief from the automatic stay based on an interest in the rents. Having subsequently confirmed GECC's Plan providing for the sale of the property in the October 29th order, the Bankruptcy Court also properly dismissed GECC's renewed stay motion as moot.

For the reasons set forth above, the Court will affirm the Orders of the Bankruptcy Court dated June 29, 1993, August 4 and 5, 1993, and October 29, 1993.