**In re INTERNET NAVIGATOR INC., Debtors.**

**No. 01–02353.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 22, 2003.

John Titler, Cedar Rapids, IA, for Internet Navigator, Inc.

Thomas McCuskey, Cedar Rapids, IA, for On–Line Services Ltd. ("OLS").

Dennis Currell, Cedar Rapids, IA, for George Walden.

Dan Childers, Cedar Rapids, IA, for Royce Bennett, Von Elbert, and Terry Letsche.

Julie Johnson McLean, Des Moines, IA, for South Slope Cooperative Telephone Co.

Ray Terpstra, Cedar Rapids, IA, for Bradley & Riley.

John Schmillen, Cedar Rapids, IA, U.S. Trustee.

## ORDER RE CONFIRMATION AND DISCLOSURE STATEMENTS

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on December 4, 2002. The matter before the Court is confirmation of competing plans filed by Debtor Internet Navigator, Inc. and by On–Line Services Ltd. Also before the Court were OLS' objections to claims which are under advisement and will be determined by separate order.

After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Hearing was also held on Disclosure Statements. The Court finds the Disclosure Statements to be adequate and are approved.

### FINDINGS OF FACT

Amended, competing plans were filed by Debtor and by OLS. Debtor filed its final plan March 8, 2002. OLS and Creditor George Walden object to Debtor's Plan. OLS filed a Fourth Amended Plan with technical changes on September 24, 2002.

Debtor, Bradley & Riley and South Slope filed objections to OLS' Plan.

Royce Bennett, Von Elbert and Terry Letsche are principals and shareholders of Debtor. They each have asserted claims for wages, reimbursement of expenses and interest, totaling approximately $274,000 according to proofs of claims filed. Debtor's plan allows these claims. OLS' plan challenges these claims, as well as the claim of Bradley & Riley, but proposes to pay all allowed claims in full. Allowance of the claims of Bennett, Elbert and Letsche has been heard and is under advisement. The hearing on Bradley & Riley's claim is set for February 13, 2003.

Michael Glick, George Walden and Geoffrey Lohff filed claims totaling approximately $700,000. They are former shareholders of Debtor. The claims arose out of settlement of shareholder litigation instituted by these three individuals against Debtor. These claims are now assigned to OLS. Mr. Glick is identified as chief executive officer and owner of OLS in the disclosure statement. Mr. Walden and Mr. Lohff are apparently shareholders of OLS. OLS' Plan is essentially an attempt by former shareholders to takeover Debtor from its remaining shareholders.

## 1. DEBTOR'S PLAN

The distribution amount under Debtor's Plan is $475,000, to be paid quarterly in increasing amounts between $12,000 and $22,500 over approximately 22 quarters. General unsecured creditors will be paid approximately 75% of their claims. The remainder will be paid on claims now held by OLS, giving it approximately 40% of the total amount of its claims.

OLS objects to treatment of its claims in Debtor's Plan. Further, OLS argues Debtor's Plan fails to follow priority rules and improperly bars actions against non-debtors. Debtor should specify that directors will not receive payment or stock until the plan is paid in full. The Plan fails to state when certain claims will be paid. South Slope's interest is not sufficiently described.

George Walden objects and adopts the objections of OLS. Mr. Walden asserts the plan is not filed in good faith. He states the plan is a fraud on minority shareholders holding confessed judgments. He also asserts the plan is likely to be followed by liquidation. Debtor does not appear to anticipate remaining in business long-term and its relationship with South Slope is unclear. Walden objects to South Slope's participation in this case. Debtor appears to be a member of South Slope, which raises questions about South Slope's ability to take an assignment of First National Bank's claim.

Debtor's Report on Ballots states a rejection by Class EEL is not relevant as that Class is unimpaired. Class SS, containing OLS' claims, rejects the plan. Rejections by creditors Glick and Walden are not to be counted as OLS has been assigned their claims. Acceptances total $877,782 in amount. The only rejection which counts is OLS in Class SS with a claim of approximately $700,000.

## 2. ON-LINE SERVICES PLAN

OLS states its plan will pay all allowed claims in full, in cash, with interest, on the date of confirmation. This includes claims to which it objects, after those objections are resolved and allowance of the claims is determined. OLS asserts no class of claims is impaired and thus all classes are presumed to accept the plan. The plan will be funded by $950,000 in new money. Solon State Bank is OLS' lender. The total amount is now being held in escrow. All possible contingencies to full payment have now been waived.

Debtor objects to OLS' Plan. It asserts OLS' plan is vague and imprecise. The plan does not contain specific timing for the transfer of assets. Tax effects and legal ramifications cannot be determined. Debtor argues the plan unfairly discriminates against unsecured claims of Bradley & Riley, and creditors Bennett, Letsche and Elbert. It asserts the plan unfairly treats interests of equity holders, who should receive the amount of any disallowed claims after OLS' claim objections are resolved. OLS' payment in full should include payment of all claims which Debtor proposes to allow. Debtor argues the plan is not fair and equitable.

Bradley & Riley objects to Paragraph IV, Due Diligence, which allows OLS to withdraw its plan if underlying assumptions are determined to be untrue. It also asserts certain terms of the escrow agreement are unacceptable.

South Slope Coop Telephone Co., which has taken assignment of the claim of First National Bank of Creston, also objects to the escrow agreement and the due diligence provision. It argues Debtor's Plan should be confirmed, in view of the preferences of the creditors and equity holders of Debtor, experience of management and long-term feasibility. South Slope asserts Debtor's plan will have no negative impact on employees, management and customers.

George Walden supports OLS' plan. He argues Debtor's plan pays creditors less than 100% and asserts it discriminates against former minority shareholders. Mr. Walden argues management's reservation of the right to issue more stock could violate the absolute priority rule. He asserts OLS' plan should be confirmed as it provides 100% payment to all creditors with no contingencies.

## CONCLUSIONS OF LAW

■ The Court's starting point is to determine whether either or both of the plans as presented are confirmable. *In re Valley View Shopping Ctr.*, 260 B.R. 10, 22 (Bankr.D.Kan.2001). In order for the Court to confirm either Plan, the Court must find that each of the required elements of § 1129(a) have been met. If all of the subparts of § 1129(a) except (a)(8) have been met, a plan may still be confirmed under the cramdown provisions of § 1129(b). The requirement of § 1129(a)(8), unanimous acceptance of the plan by impaired classes, does not have to be met if the plan does not discriminate unfairly and is "fair and equitable" with respect to each impaired class of claims that has not accepted the plan. The proponent of the plan bears the burden of proof with respect to each element of §§ 1129(a) and 1129(b) under a preponderance of the evidence standard. *Valley View Shopping Ctr.*, 260 B.R. at 22.

■ Under § 1129(c), the court may confirm only one plan. *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 245 (Bankr.D.N.J.2000). "If the requirements of subsections (a) and (b) of [§ 1129] are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c). Beyond considering the preferences of creditors and equity security holders, the court considers: "(1) the type of plan; (2) the treatment of creditors and equity security holders; (3) the feasibility of the plan; and (4) the preferences of creditors and equity security holders." *In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 493 (Bankr.M.D.Fla.1999). A takeover plan can be confirmed if meets the requirements of § 1129. *See In re Consul Restaurant Corp.*, 146 B.R. 979, 991 (Bankr.D.Minn.1992).

■ "Under the language of § 1129(c), a bankruptcy court is only obligated to

consider the preferences of the creditors and equity interests, not obey them." *In re River Village Assocs.*, 181 B.R. 795, 807 (E.D.Pa.1995). In *River Village*, the court concluded that unimpaired creditors would prefer a plan which leaves them financially whole. *Id.* All of the creditors were unimpaired and were deemed to have accepted the non-debtor's plan without voting pursuant to 11 U.S.C. § 1126(f), even though votes of equity holders and one unsecured creditor favored the debtor's plan over that of the non-debtor. *Id.*

## ANALYSIS

Based on the record presented, the Court concludes both plans meet the requirements of § 1129 for confirmation. Neither Debtor nor OLS has presented sufficient evidence that either plan fails to comply with § 1129(a) or (b). Because OLS' plan pays allowed claims in full, all classes are deemed to accept the plan. Debtor's plan has received the acceptance of an impaired class.

■ Mr. Walden argues Debtor's treatment of the claims OLS holds by assignment from Walden, Glick and Lohff is discriminatory and not fair and equitable. "Section 1129(b)(1) does not prohibit all discrimination, but only that discrimination which is unfair." *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr.D.Minn.1990). Courts use a four-part test in assessing the "fairness" of discrimination:

1. Whether the discrimination is supported by a reasonable basis;
2. Whether the debtor can confirm and consummate a plan without the discrimination;
3. Whether the discrimination is proposed in good faith; and
4. The treatment of the classes discriminated against.

*Id.*

■ Based on the record provided, the Court concludes that different treatment in Debtor's plan between the class of general unsecured creditors and the class containing OLS' assigned claims is supportable under § 1129(b)(1). The Plan proposes to provide OLS with approximately 40% of its claims and general unsecureds with approximately 75%. The record does not support a finding that the different treatment is not proposed in good faith. Debtor's financial projections show payment of 75% to both classes would not likely feasible. It is reasonable to treat the classes differently considering the differing bases of the claims.

■ The main focus of this proceeding is to determine which of the two confirmable plans should be confirmed. Both plans contemplate continuation of Debtor's business. OLS' plan constitutes a takeover of the business with new management and ownership. OLS' plan is more feasible than Debtor's as OLS will pay 100% of all allowed claims immediately with all contingencies waived. OLS' funds are currently in escrow to facilitate this payment. Debtor's plan requires it to meet projected income over approximately 5 years and provides less than 100% payment to creditors.

The parties stress the importance of the preferences of creditors and equity security holders. Debtor's equity holders and principals wish to maintain control of the company and support Debtor's plan. Former equity holders, represented by the claims held by OLS, wish to gain control of the company and support OLS' plan. Bradley & Riley holds a claim in the amount of $201,449 and prefers Debtor's plan. OLS has challenged the claim but will pay the full allowed amount. South Slope holds the claim of First National Bank of Creston in the amount of $128,723. It prefers Debtor's plan. OLS holding

claims of approximately $700,000 obviously prefers its plan over Debtor's. In this case, the preferences expressed by creditors are skewed by the fact that Debtor's largest creditor, OLS, represents former equity holders. The Court also considers that it is reasonable to assume that creditors prefer a plan which leaves them financially whole with immediate payments in cash rather than over time.

Based upon the foregoing, the Court concludes both Debtor's and OLS' plans are confirmable. As it may confirm only one plan, the Court confirms the plan proposed by On–Line Services, Inc. This decision is based on the certainty that OLS has cash in escrow to pay all allowed claims in full immediately. The fact that claims allowance determinations have not yet occurred does not undermine confirmation of OLS' plan.

**WHEREFORE,** confirmation of the Fourth Amended Plan with technical changes filed by On–Line Services Ltd. on September 24, 2002 is GRANTED.

**FURTHER,** confirmation of Debtor's plan of reorganization is DENIED.

**FURTHER,** the Court finds the Disclosure Statements adequate and are hereby APPROVED.